## Opinion of the Court to the Governor in the Matter of the Debts of R. I. Emergency Public Works Corporation.

### December 13, 1933.

Supreme Court, December 13, 1933.

*To His Excellency Theodore Francis Green,*
*Governor of the State of Rhode Island*
*and Providence Plantations.*

We have received Your Excellency's request for an opinion upon the following question of law: "Are the debts of Rhode Island Emergency Public Works Corporation to the Federal Government for public works under the provisions of the National Industrial Recovery Act, Act of June 16, 1933, Public No. 67, debts of the State within the meaning of Article IV, Section 13 of the Constitution?"

The objective sought by the federal and state governments in passing the National Industrial Recovery Act, and the State statute in relation thereto, is stated in Section 1 of said act in part as follows: "to reduce and relieve unemployment, to improve standards of labor, and otherwise to rehabilitate industry . . . ." To effectuate this policy Congress authorized the President, or those appointed by him, to advance government funds for the prosecution of a "comprehensive program of public works."

To answer the question propounded requires a consideration of the plan adopted by this State as set forth in Chapter 2078 of the Public Laws, enacted by the General Assembly in June, 1933, the pertinent parts of which are as follows:

"Sec. 3. There is hereby created a commission, to be known as the 'Emergency Public Works Commission' and to consist of the Governor, the state commissioner of finance and the chairmen of the finance committees of the senate and the house of representatives, all being members *ex-officio*, which shall be the special agency of the state to co-operate with and assist the proper agencies of the federal government in the matter of federal aid projects in this state under said National Industrial Recovery Act and to have general supervision and control over such projects, as hereinafter provided. . . ."

"Sec. 7. If a project submitted by a state agency shall be approved, as above provided, and shall be submitted to, and approved for federal aid by, the proper federal agency or agencies under said act, and it shall be necessary for carrying out such project to procure funds beyond what can be procured as a grant of federal aid under said act and beyond any unexpended funds appropriated by the general assembly for such project, the commission may procure such additional money for financing such project from the proper agency under said act or from other sources, by means of a loan or loans, giving therefor such written acknowledgments and other written instruments, (in the name and sealed with the seal of the state or otherwise), as may be agreed upon by the commission and such agency as security for the repayment of such loan or loans and the payment of interest thereon. For the purpose of procuring and securing

the repayment of such loan or loans and the payment of interest thereon, the commission is hereby authorized to cause the incorporation and organization under the general corporation law, or by following the procedure prescribed in said law for the creation and organization of business corporations, of such corporation under the control of the state, to be exercised through the commission during its period of existence, and with such powers suitable for the carrying out of said project as the commission may deem proper, and to cause any or all of the real and personal property involved in such project or any rights or interests therein to be vested in and held by said corporation and to cause said corporation to execute and deliver any such mortgages, leases, agreements or other instruments as may be proper and sufficient for procuring and securing the repayment of such loan or loans and the payment of interest thereon. The commission is also hereby authorized to enter into such agreements with the proper agency or agencies under said act for the construction, execution, financing or aiding in the construction of any project, approved as aforesaid, otherwise than by loans, as it may deem proper, as for instance by vesting in the federal government or any agency created by such government or its proper agency under said act the title to the property involved in such project and arranging for the use of such property by the state or an agency thereof, under a lease or otherwise, upon such terms and conditions as the commission shall deem proper, until the money advanced by the federal government or its proper agency for such project shall be repaid or otherwise reimbursed to it and interest paid thereon, or said government or agency shall be otherwise fully satisfied with regard to such money. All applications for federal aid for such projects shall be made by the governor in behalf of the commission and all negotiations with the proper federal agencies relative to such projects shall be carried on by him or under his supervision and control."

Acting under the provisions of said chapter the Rhode Island Emergency Public Works Corporation, hereinafter called the corporation, was formed in the manner provided, the Governor, Commissioner of Finance, chairmen of the house and senate finance committees being the officers

thereof, and the one share of no par value stock was issued by the corporation to the State of Rhode Island. Thereafter, as appears from the records submitted to us, certain public projects for the improvement of certain property of the State were duly approved for the following amounts and purposes: Hospital at Exeter School, $125,000; Dormitory at Exeter School, $179,324; Water System for State Institutions at Howard, $54,430.14; Employees' Dormitory at Howard, $235,000; Water System at the State College, $8,400; and an addition to the State Office Building, $154,786; all totalling $755,940.14.

At the hearing before this court the Assistant Attorney General, who appeared as counsel for the commission and the corporation, stated that the federal government was ready to grant to the corporation thirty per cent of the cost of each of said approved projects and to furnish, in the form of a loan to said corporation, the remaining seventy per cent of such costs.

The articles of association of the corporation, filed by the members of the commission, state the general purpose for which the corporation was organized, and expressly declare that the corporation "shall have no power to incur State debts but only debts of itself as a separate corporate entity."

There is ample authority for holding that a corporation similar in character and purpose to the Rhode Island Emergency Public Works Corporation is a quasi-public corporation having a distinct legal entity apart from the state which caused it to be created. Considering this legal principle, the above statement of facts made by the Assistant Attorney General and the express negation in the charter of the corporation of any power to incur State debts, it is our opinion that any debts incurred by the corporation are corporate debts and not debts of the State.

The question propounded involves the further question whether the pledge or transfer of the property of the State of Rhode Island to secure the indebtedness incurred by said

corporation for the improvement of State property creates an indebtedness of the State within the meaning of Section 13 of Article IV of the Constitution of this State, which is as follows:

> "The general assembly shall have no power, hereafter, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of insurrection or invasion; nor shall they in any case, without such consent, pledge the faith of the state for the payment of the obligations of others.   This section shall not be construed to refer to any money that may be deposited with this state by the government of the United States."

By Section 7 of Chapter 2078, *supra*, the corporation is given the power to pledge or transfer title of property of the State as security for the payment of the amounts due.   Said section 13 provides that without the express consent of the people debts to an amount exceeding fifty thousand dollars may not be incurred.   We are confronted with the question whether a pledge of the State's property as security for the payment of sums greatly in excess of fifty thousand dollars violates this constitutional provision.

In passing the National Industrial Recovery Act it is apparent that Congress considered the existence of constitutional limitations as to the indebtedness which might be incurred by a state and in Section 203 (d) of the Act provided that:

> "The President, in his discretion, and under such terms as he may prescribe, may extend any of the benefits of this title to any state, county or municipality notwithstanding any constitutional or legal restriction or limitation on the right or power of such state, county or municipality to borrow money or incur indebtedness"; and in (a) (1) (2)

of said section the President is authorized to aid in the construction or financing of any public works "upon such

terms as the President shall prescribe, to make grants to states, municipalities, or other public bodies . . . ."

While courts have held in numerous cases that debts of corporations similar in character to the Rhode Island Emergency Public Works Corporation are debts solely of the corporation and not of the state, nevertheless it must be borne in mind that, although under Chapter 2078 the State does not specifically promise to repay any of the money expended by the government in the construction or improvement of the State property, the practical result of the proposition is that the State authorizes the federal government to keep the property of the State, pledged by a corporation possessed of no assets with which to redeem such property. Unless the State pays the debts for which its property is pledged, to release the same from the lien created upon it through the Act of the corporation, the property will be lost to the State. In substance there is no difference between the obligation of the State to pay its direct debts and its duty to redeem its property pledged as security for money expended for its benefit. The will of the people, as expressed in their constitution, may not be defeated through the formation of a corporation to accomplish by indirection that which may not be done directly. The practical effect is the same whether such obligations arise through the pledge of the property of the State or by express promise. In either event the obligation must be paid with the money of the people, and incurrence of such obligation, unless consented to by them, is contrary to said section 13 of Article IV.

A charge upon the property of the State is, to all practical intents and purposes, a debt of the State. A state need not pledge its property. It can borrow, without pledge or security, ample funds for its needs through bond issues properly authorized. It is inconceivable that the State of Rhode Island would fail to redeem public property necessary in the conduct of its manifold activities. Furthermore, Section 13 of said article IV provides also: "nor shall they (the general assembly) in any case, without such consent

pledge the faith of the State for the payment of the obligations of others." It is our opinion that if property of the State is pledged as security for a loan to the Rhode Island Emergency Public Works Corporation "the faith of the State" is pledged, at least to the extent of the value of the property pledged or conveyed, "for the payment of the obligations" of another.

For the reasons stated we answer your question in the negative provided that no property of the State is pledged or transferred as security.

If the property of the State is pledged or transferred as security, we answer the question in the affirmative.

CHARLES F. STEARNS,
ELMER J. RATHBUN,
JOHN W. SWEENEY,
JOHN S. MURDOCK,
J. JEROME HAHN.

William W. Moss, Assistant Attorney General, appeared and argued.

Brief submitted by James W. Leighton, Counsel to Emergency Public Works Commission.