THE UNION PACIFIC RAILROAD, PLAINTIFF, v. THE COUNTY OF DAWSON, DEFENDANT.

1. Taxes: SINKING FUND. The county commissioners have no authority to divert a sinking fund tax from the purpose for which it was raised and transfer it to the general fund.

2. ——: ——: TRANSFER. The act of 1875 merely author-
izes the transfer to the general fund of the surplus sinking fund,
after the debt for which it was levied is extinguished.

3. ——: SCHOOL TAXES. In 1879 school taxes for all purposes
were restricted to a sum not exceeding twenty-five mills on the
dollar valuation. *B. & M. R. R. Co. v. York County*, 7 Neb.,
487, adhered to.

ORIGINAL application for injunction.

*A. J. Poppleton*, for plaintiff.

*C. W. McNamar*, for defendant.

MAXWELL, J.

This is an original action brought to restrain the col-
lection of a sinking fund tax, levied upon the property of
the plaintiff in Dawson county, in the year 1879, and also
school taxes levied in excess of twenty-five mills on the dol-
lar valuation in school districts No. 5, 6, 7, 11, 13, 17 and
27, of said county, in said year. A referee was appointed
to take testimony, and his report is now before the court.
During the pendency of this action, the case of the *U. P.
Railway Co. v. Dawson County*, has been determined, hold-
ing that the bonds in question are valid. The sinking
fund tax, so far as is necessary to meet such obligations,
is therefore valid and binding.

The plaintiff however insists, that under the prayer for
general relief it is entitled to a decree enjoining the com-
missioners from mis-appropriating such funds. It ap-
pears from the testimony that $3,039.13 of the sinking
fund tax of that county, for the year 1877, was transferred
to the county general fund; that in the year 1878,
$4,936.18, was transferred to the county general fund, and
$746.93 to the county road fund; that in the year 1879,
$3,768.68 was transferred to the county general fund, and
that these several sums were so transferred by the order
of the county commissioners, and that an order still
exists upon their record, authorizing such transfers. The
power to transfer funds appears to be claimed under the

provisions of an act: "To transfer surplus county sink-
ing and other funds to the county general fund," approved
February 15th, 1877, which provides: "That the board
of county commissioners of the several counties of the
state may appropriate to the county general fund
any sinking fund in the county treasury, not levied for
the payment of any bonded indebtedness; also any county
moneys, from whatever source, excepting moneys levied
for school purposes, that remain on hand in the county
treasury, and are no longer required for the purpose for
which the same were levied." [Comp. Stat., Chap. 18,
Art. III, Sec. 4.]

A sinking fund tax is a tax raised to be applied to the
payment of the principal and interest of a public loan.
*U. P. R. R. v. Buffalo County*, 9 Neb., 449. *U. P R. R.
v. York County*, 10 Neb., 612.

Sec. 5, Art. IX, of the constitution provides that:
"County authorities shall never assess taxes the aggre-
gate of which shall exceed one and one-half dollars per
one hundred dollars valuation, except for the payment
of indebtedness existing at the adoption of this constitu-
tion, unless authorized by a vote of the people."

Sec. 30 of the revenue law, as amended in 1877, was as
follows: "The rate of the general state tax shall not be
less than one-half mill, nor more than four mills, on the
dollar valuation; the rate of the state school tax shall
not be less than one-half mill, nor more than two mills,
on the dollar valuation; and the rate of the state sinking
fund tax shall not be more than one mill on the dollar
valuation, in any county in the state. For ordinary
county revenue, including the support of the poor, not
more than ten mills on the dollar; for county sinking
fund such rate as in the estimation of the commission-
ers will pay one year's interest on all outstanding debts
of the county, with not less than five per cent. of the
principal." Laws 1877, 45.

The revenue law of 1879, [Comp. Stat., Chap. 77,] did not take effect until September 1st of that year, therefore the act of 1877 was in force at the time the taxes in question were levied.

The limitation upon the rate of taxation is for the protection of taxpayers, and to secure economy in the expenditure of public moneys. It is the evident intention of the law that only the amount required in any particular fund in one year shall be levied, and no more. If the law limits the levy for the ordinary county revenue to ten mills on the dollar valuation, no greater sum can be raised for that purpose by levying more than is required for a sinking fund, or any other tax, and then transferring the surplus to the general fund. If the law could thus be evaded it would afford no protection to taxpayers whatever. The act of 1877 merely authorizes the transfer of such portion of the sinking fund as is "no longer required for the purposes for which the same was levied." When will such funds be no longer required for the purposes for which they were levied? Evidently when the debt is paid in full, and not before. That is, if a surplus remains in the treasury after the debt is paid in full, it may be transferred to the general fund. But until such time the sinking fund tax must all be applied to the purposes for which it was raised, and a taxpayer may compel its application to that purpose. The plaintiff is therefore entitled to a decree enjoining the defendant from transferring such funds to the general fund of the county.

It appears from the testimony that the school districts above designated caused taxes to be levied in the year 1879, varying from thirty to sixty mills on the dollar valuation. The question here involved was before this court in the case of the *B. & M. R. R. v. York County*, 7 Neb., 487.

Sec. 31 of "An act to establish a system of public in-

struction for the state of Nebraska," approved Feb. 15th, 1869, provided that: "Any school district may, at any annual or special meeting, impose a tax on the taxable property of the district in any amount not exceeding ten mills on the dollar, on the assessed valuation of the property of the district, for the purpose of building a school house, and such tax, when voted, shall be reported by the district board to the county clerk, and levied and collected in the same manner as other taxes voted by the district."

Sec. 32 provided that: "The qualified voters, when assembled at any annual or special meeting, may, from time to time, impose such tax as may be necessary to pay teachers, to keep their school houses in repair, and to provide the necessary appendages, and to pay and discharge any debts or liabilities of the district lawfully incurred; may raise a sum sufficient for the purchase of books of reference, globes, maps, or any apparatus for the purpose of illustrating the principles of astronomy, natural philosophy, natural history, and agricultural chemistry, or the mechanic arts." Gen. Stat., 966.

In 1875 these sections were amended as follows:

Sec. 31. "Any school district may at any annual or special meeting impose a tax on the taxable property of the district in any amount not exceeding twenty-five mills on the dollar on the assessed valuation of the property of the district, and such tax, when voted, shall be reported by the district board to the county clerk, and levied and collected in the same manner as other taxes voted by the district."

Sec. 32. "The tax levied and collected, as provided by the preceding section, shall be expended under the direction of the district, or in the absence of such direction by the district, then such tax shall be expended as the district board of the proper district may direct." Laws 1875, 116.

It will be perceived that the power to vote taxes, given

by sec. thirty-two of the act of 1869, was· entirely taken away by the amendment of 1875, the school district or board being merely authorized to expend the taxes voted under the provisions of section 31. The authority of a school district to impose taxes upon the persons and property within its boundaries is wholly statutory, and as the exercise of such taxation may result in transferring the title of property within the district, it must be clearly given and strictly pursued. The reckless manner in which many school districts expended the annual levy of taxes doubtless induced the legislature of 1875 to limit all the taxes voted by a school district to twenty-five mills on the dollar valuation. But whatever the motive may have been, the intention is clear to limit the levy to that sum. And no statute has been pointed out to us authorizing the imposition of a higher rate of taxation.

We are referred to sec. 13 of an act "To provide for the issuing and payment of school district bonds," approved February 26th, 1879, [Comp. Stat., Chap. 79, Subdivision XV.], as conferring authority to levy taxes in excess of twenty-five mills. But that it does not have that effect is clear, because the limitation in the amendment of 1875, Subdivision heretofore referred to, was still in full force. We adhere to our decision in the *B. & M. R. R. v. York County*, and the school district taxes set forth in the petition in excess of twenty-five mills on the dollar valuation will be enjoined. A decree will be entered in conformity with this opinion.

DECREE ACCORDINGLY.