CLIFFORD L. REIN, ON BEHALF OF HIMSELF AND OTHER PER-
SONS SIMILARLY SITUATED, APPELLANT, v. RAY C. JOHNSON
ET AL., APPELLEES.

30 N. W. 2d 548

Filed December 26, 1947.   No. 32275.

*William Niklaus* and *Herbert W. Baird,* for appellant.

*Walter R. Johnson,* Attorney General, and *Homer L. Kyle,* for appellees.

Heard before SIMMONS, C. J., PAINE, YEAGER, CHAPPELL, and WENKE, JJ., and KROGER, District Judge.

CHAPPELL, J.

This action in equity was prosecuted by plaintiff for himself and others similarly situated, who, as taxpayers, allegedly contributed to the State Assistance Fund. Plaintiff sought thereby to enjoin the State Auditor and the State Treasurer from paying out any of such funds except for assistance purposes, have an accounting of the fund, and obtain ancillary relief.

The trial court, after hearing upon the merits, entered its decree, finding generally for defendants and dismissing plaintiff's action. Motion for new trial was overruled, and plaintiff appealed. His assignments of error were substantially that: (1) The trial court erred in failing to adjudge that the State Assistance Fund was a special fund impressed with a trust for assistance purposes which could not be diverted in whole or in part to other uses or purposes of the state government; and,

(2) erred in finding and adjudging that chapter 242, Laws 1945, page 723, was enacted in compliance with constitutional requirements. We conclude that plaintiff's assignments cannot be sustained.

This court is confronted at the outset with two alleged jurisdictional questions, appropriately raised and preserved by defendants. The first such question is whether or not the action was one against the state, which could not be maintained in the absence of appropriate legislative authority. We conclude that the case at bar was not one against the state.

In that regard, plaintiff first contended that section 68-301, R. S. 1943, created and established in the treasury of the state a fund known as the "State Assistance Fund" which thereby specifically, absolutely, and continuously appropriated for the purposes of section 68-301 to 68-325, R. S. 1943, all moneys available from certain tax sources legislatively described and defined. A fortiori, plaintiff contended that chapter 242, Laws 1945, page 723, which reappropriated for assistance purposes only a portion of the unexpended balance remaining in the State Assistance Fund as of June 30, 1945, and lapsed or transferred the residue to the general fund, was unconstitutional and of no force and effect whatever. It was obedience to such act by defendants which plaintiff sought to enjoin.

Generally, the applicable rule is that an action against state officers, attacking the constitutionality of a statute of the state and seeking to enjoin its enforcement by such officers, or otherwise obtain relief from an alleged invalid act or abuse of authority by them is not ordinarily a suit against the state, and is not prohibited as such under the general principles governing the immunity of the state from suit. That is true because acts of state officers not legally authorized, or which exceed or abuse the authority conferred upon them, are judicially regarded as their own acts and not acts of the state. 49 Am. Jur., States, Territories, and Dependencies, § 94, p. 307,

§ 95, p. 310; 59 C. J., States, § 465, p. 310; 43 C. J. S., Injunctions, § 109, p. 626; 32 C. J., Injunctions, § 389, p. 247.

As stated in Burke v. Snively, 208 Ill. 328, 70 N. E. 327: "In equity the money in the State treasury is the money of the people of the State, and suits by a tax-payer to restrain the misappropriation by public officers of such money to an unauthorized purpose are not suits against the State."

Also, as stated in White Eagle Oil & Refining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, quoting with approval from Mullen v. Dwight, et al., Regents of Education, 42 S. D. 171, 173 N. W. 645: "Likewise, state officials may be restrained or prohibited by appropriate action or procedure, in any court having jurisdiction, from performing unlawful acts as such officials, without the consent of the state, as such procedure is not deemed a suit against the state." See, also, 59 C. J., States, § 466, p. 312.

The court is also required to decide whether or not plaintiff had the right as a taxpayer to maintain the action. We conclude that he did have that right.

Plaintiff contended substantially that defendants, without lawful authority, transferred money from the State Assistance Fund to the general fund and threatened unlawfully to expend it for other than assistance purposes.

In that regard, resident taxpayers of the state have an equitable interest in the public funds of the state and in their proper application. As such, they may enjoin unlawful expenditures thereof by public boards or officers, without showing any interest or injury peculiar to themselves. Woodruff v. Welton, 70 Neb. 665, 97 N. W. 1037; Fischer v. Marsh, 113 Neb. 153, 202 N. W. 422; 59 C. J., States, § 426, p. 280.

As early as Union P. R. R. Co. v. Dawson County, 12 Neb. 254, 11 N. W. 307, it was concluded that a taxpayer could maintain an action to enjoin the unlawful trans-

fer or diversion as well as the unlawful expenditure of public funds raised by taxation.

Actions brought to enjoin an alleged illegal expenditure, misappropriation, transfer, or diversion of public funds by public boards or officers, are in their nature public proceedings to test the constitutional or statutory validity of official acts, and courts in passing upon the taxpayer's right to maintain such actions will be guided by applicable legal principles and not by the factual question of whether or not the particular taxpayer or the public will actually gain or lose by the relief sought to be awarded.

We turn then to the primary questions involved. Decision depends upon legal principles applicable to undisputed facts. The legislative history of the State Assistance Fund, together with appropriations therefor, becomes important as a foundation for a discussion of plaintiff's contentions.

Chapter 20, Laws 1935 (Special), section 1, page 134, provided: "A Fund to be known as the 'State Assistance Fund' is hereby created and established in the treasury of the state of Nebraska. There is hereby appropriated for said fund and the purposes of this Act for the period ending June 30, 1937, the following sums: (a) From the state general fund $2,083,000.00; (b) From the one-cent gasoline tax to be collected, as provided in House Roll No. 6, Fifty-first (Special) Session, Legislature of Nebraska, $2,430,000.00; Total $4,513,000.00. Any unexpended balance remaining in said fund on June 30, 1937, shall be transferred and credited to the general fund of the state."

Chapter 22, Laws 1935 (Special), page 150, specifically appropriated $2,083,000 from the general fund, and $2,-430,000 to be derived from described taxes, or a total of $4,513,000 for the uses and purposes of the State Assistance Fund.

In 1937, at its regular session, the Legislature enacted chapter 188, Laws 1937, section 1, page 747, thereby

amending chapter 20, Laws 1935 (Special), section 1, page 134, as follows: "A Fund to be known as the 'State Assistance Fund' is hereby created and established in the treasury of the State of Nebraska. There is hereby specifically and absolutely appropriated for said fund and the purposes of this Act for the period ending June 30, 1939, from any moneys available therefor from motor fuels taxes, alcoholic liquor taxes, head taxes and such other taxes as may be provided by law, the sum of $7,500,000.00. Any unexpended balance remaining on June 30, 1939, shall be transferred and credited to the general fund of the state."

Chapter 193, Laws 1937, section 49, page 783, specifically appropriated for assistance purposes the above described taxes, as allocated by law, together with any unexpended balances for the biennium ending June 30, 1937, in the fund or any other fund inuring to the State Assistance Fund, not to exceed $7,500,000. Also, for the remainder of the then existing biennium, it transferred from the general fund to the State Assistance Fund $860,835, and appropriated that amount, making it immediately available for assistance purposes.

On February 7, 1939, the then Governor delivered a special message to the Legislature, requesting an emergency appropriation of an additional $300,000 for the State Assistance Fund and its purposes, during the balance of the biennium ending June 30, 1939. In conformity with that request, Legislative Bill No. 494, an emergency measure, was introduced March 6, 1939, and enacted as chapter 121, Laws 1939, section 1, page 509, effective April 28, 1939. See Legislative Journal, 1939, pages 321 and 514. That act amended chapter 188, Laws 1937, section 1, page 747, and was a duplicate thereof, except as amended, the sum specifically appropriated therein for the biennium was made $7,800,000, i. e., $300,000 more than that provided in the 1937 act. It will be noted that the latter act also provided: "Any unexpended balance remaining on June 30, 1939, shall

be transferred and credited to the general fund of the state." The act thereafter appeared as section 68-317, C. S. Supp., 1939.

Chapter 133, Laws 1939, section 50, page 571, then appropriated for assistance purposes during the ensuing biennium certain described allocated taxes, and reappropriated any unexpended balances for the biennium ending June 30, 1939, in said fund or in any other fund inuring to the State Assistance Fund, not to exceed $8,400,000.

We discover also that chapter 122, Laws 1939, page 511, appropriated $400,000 out of the general fund, making such sum immediately available as a revolving fund to supplement the State Assistance Fund and thereby effect a more punctual administration of assistance laws. The act provided that the Board of Control of State Institutions, as directed by the Legislature from time to time, should reimburse the general fund for the amount thus appropriated, and provided that the entire amount should be repaid to the general fund within ten years from May 18, 1939, the effective date of the act. It further provided: "* * * no unexpended balance in the State Assistance Fund shall ever lapse or shall ever be reappropriated to the general fund until said revolving fund shall have repaid the general fund as herein provided."

Whether the above-quoted provision was constitutionally operative is now unimportant, because chapter 171, Laws 1941, page 673, repealed the above act in toto, effective May 5, 1941, and appropriated $400,000 out of the general fund to establish a "state surplus agricultural revolving fund."

Chapter 174, Laws 1941, section 1, page 681, was then enacted. It amended section 68-317, C. S. Supp., 1939, and provided: "A fund to be known as the 'state assistance fund' is hereby created and established in the treasury of the State of Nebraska. There is hereby specifically and absolutely appropriated for said fund

and the purposes of this act all moneys available therefor from motor fuel taxes, alcoholic liquor taxes, head taxes and such other taxes as may be provided by law." That act now appears as section 68-301, R. S. 1943.

It will be noted that for the first time since 1935, an act creating the State Assistance Fund and providing sources from which its moneys were to be derived, was given the character of permanency as distinguished from one of emergency. Also, for the first time, the Legislature omitted therefrom any attempt to specifically appropriate a definite sum to said fund for the biennium and doubtless being fully cognizant of the application and operation of constitutional provisions, omitted therefrom any provision for lapse or transfer to the general fund of any unexpended balance remaining in the fund at the expiration of the first fiscal quarter after the adjournment of the next regular session.

Chapter 183, Laws 1941, section 48, page 742, appropriated for assistance purposes described allocated taxes, and reappropriated any unexpended balances for the biennium ending June 30, 1941, in said fund or any other fund inuring to the State Assistance Fund, estimated $10,196,000.

Likewise, chapter 220, Laws 1943, section 24, page 744, appropriated for assistance purposes described allocated taxes, and reappropriated any unexpended balances for the biennium ending June 30, 1943, in said fund or any other fund inuring to the State Assistance Fund, estimated $11,031,000.

Thereafter, chapter 242, Laws 1945, section 25, page 751, appropriated for assistance purposes described allocated taxes, and reappropriated $1,000,000 of the unexpended balance on hand in said fund as of June 30, 1945, in Auditor account No. 352, and all other unexpended balances in any other fund inuring to the State Assistance Fund, including any unexpended balances on hand in Auditor accounts Nos. 351, 357, and 358, as of June 30, 1945, estimated $10,000,000. Section 50, page

772, of that act provided that any unexpended balances as of June 30, 1945, not reappropriated, shall lapse to the state general fund. Also, section 55, page 773, provided that: "Any unexpended balances, not otherwise appropriated, in the hands of the State Treasurer on June 30, 1945, are hereby transferred to the state general fund."

On June 30, 1945, there was an unexpended balance of $2,137,257.57 in Auditor account No. 352, and, by virtue of section 22, article III, Constitution of Nebraska, and chapter 242, Laws 1945, section 25, page 751, section 50, page 772, and section 55, page 773, the sum of $1,137,-257.57 lapsed into the general fund and was transferred thereto, the validity of which was questioned by plaintiff in this action.

It should be stated that section 25, *supra,* reappropriated all unexpended balances of federal assistance funds on hand as of June 30, 1945, in Auditor accounts Nos. 351a and 352a, and then appropriated all receipts thereof during the biennium, estimated $10,000,000. In addition, it reappropriated any unexpended balances of federal funds on hand as of June 30, 1945, and all receipts thereof for the biennium for crippled children and child welfare, estimated $120,000 and $60,000 respectively.

It is clear, therefore, that federal funds are not involved in the case at bar. They have no relation either factual or legal to the question involved, and will not be further discussed.

Two undisputed facts are here recalled. Since 1935, the Legislature has appropriated out of and transferred from the general fund to the State Assistance Fund the sum of $2,943,835. At the time of the lapse or transfer of $1,137,257.57 here involved, to the general fund, it is clear that the general fund had been depleted in the amount of $1,806,577.43 for the benefit of the State Assistance Fund. Further, the evidence shows, without dispute or denial, that at the time of the trial of this

action, the State Assistance Fund had at all times been adequate to meet all lawful claims upon it and that failure to reappropriate the entire unexpended balance as of June 30, 1945, in no manner whatever had ever affected the lawful rights or claims of either applicants for or recipients of state assistance.

Having heretofore recited the legislative history of the State Assistance Fund at length, we will discuss plaintiff's contentions in the light of applicable constitutional provisions.

Section 25, article III, Constitution of Nebraska, provides in part: "No money shall be drawn from the Treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the Auditor thereon, and no money shall be diverted from any appropriation made for any purpose or taken from any fund whatever, either by joint or separate resolution." Confronted at the outset with that provision, plaintiff argued compliance therewith by contending that section 68-301, R. S. 1943, constituted a continuing appropriation of a special fund.

However, in the light thereof we are required to give force and effect to section 22, article III, Constitution of Nebraska, which provides: "Each Legislature shall make appropriations for the expenses of the Government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter."

In State ex rel. Norfolk Beet-Sugar Co. v. Moore, 50 Neb. 88, 69 N. W. 373, this court construed the above section and held: "Appropriations can only extend to the end of the next fiscal quarter succeeding the adjournment of the next regular session of the legislature. Therefore an act by its express terms enduring for a longer period cannot be construed as carrying an appropriation without making it void as in conflict with the constitution."

It is obvious that the very purpose and effect of that

constitutional provision was to prohibit all continuing legislative appropriations of public revenue raised by taxation for the expenses of government, whether they be ordinary or extraordinary expenses. 59 C. J., States, § 397, p. 258. It is not and could not be effectively argued that assistance funds did not come within the prohibited classification as expenses of government. 42 Am. Jur., Public Funds, § 73, p. 771.

The object and purpose of such a constitutional provision was to render all departments of the state government dependent upon the will of the people as expressed by their duly elected representatives, and to require such departments of government, except as otherwise provided in the Constitution, to return to that source at regular stated intervals for the necessary means of existence, because the people have learned and will continue to learn that the very preservation of their liberty depends largely upon control of the purse by their periodically elected representatives. State ex rel. Norfolk Beet-Sugar Co. v. Moore, *supra.*

It is true that within the limitations of the Constitution, the general authority of the Legislature over the state's public revenue derived from taxation is paramount. However, this court has heretofore unequivocally concluded that all unexpended balances of appropriations of public revenue derived from taxation and paid into the state treasury automatically lapse into the general fund at the end of the fiscal quarter after adjournment of the next regular session of the Legislature, and that any legislative act attempting to extend an appropriation beyond the biennium is void. State ex rel. Norfolk Beet-Sugar Co. v. Moore, *supra;* Power Oil Co. v. Cochran, 138 Neb. 827, 295 N. W. 805. In that connection, insofar as the opinions in State ex rel. Ridgell v. Hall, 99 Neb. 89, 155 N. W. 228, and 99 Neb. 95, 156 N. W. 16, are in conflict with this opinion, they are hereby overruled.

It is apparent then that even if the Legislature had

intended that section 68-301, R. S. 1943, should be a continuing appropriation, it could not so operate in violation of section 22, article III, Constitution of Nebraska. It is equally as apparent, however, from the legislative history heretofore recited, that the Legislature never intended that it should operate as an appropriation in the constitutionally prescribed sense. Rather, the word "appropriated" as used therein was of constitutional necessity as well as legislative intent, used only to indicate that certain public revenue derived or to be derived from certain described tax revenue sources should be paid into the state treasury, there to be administratively credited, assigned, or allocated to the State Assistance Fund for assistance purposes as distinguished from other public funds of a different nomenclature.

Chapter 20, Laws 1935 (Special), section 14, page 138, now section 68-321, R. S. 1943, specifically provided that: "Expenditures from the state assistance fund shall be made by the State Treasurer in the manner and form provided by law."

The purpose or design of an appropriation bill is to make provision for lawfully taking money out of the state treasury as distinguished from lawfully putting money into the state treasury, there to be allocated to a particular fund as provided in section 68-301, R. S. 1943. People ex rel. Colorado State Hospital v. Armstrong, 104 Colo. 238, 90 P. 2d 522.

Viewed in that light, it appears that the Legislature did not intend that section 68-301, R. S. 1943, should be an appropriation, much less a specific appropriation, as they are ordinarily defined. It could not constitutionally be a continuing appropriation.

Plaintiff argued that the State Assistance Fund was a special fund created for a particular purpose and could not be legislatively diverted to other purposes. It is true that public revenue derived from taxation and lawfully allocated to a special fund such as the State

Assistance Fund, or specifically appropriated thereto for its purposes, could not administratively or by legislative resolution, as distinguished from legislative law enacted by bill, be diverted or taken therefrom for other purposes. Nevertheless, any such allocation or specific appropriation, or any unexpended balance of such an appropriation remaining therein at the expiration of the first fiscal quarter after adjournment of the next regular session, would be under the plenary control of the Legislature and subject to its constitutionally enacted laws. That conclusion is inevitable, or section 22, article III, Constitution of Nebraska, would be of no force and effect as a prohibition of continuing appropriations.

Plaintiff also argued that the State Assistance Fund was a trust fund created for the benefit of recipients of assistance, which fund could not be legislatively diverted therefrom. Doubtless the public revenue derived from taxation and lawfully allocated to the State Assistance Fund or specifically appropriated for state assistance purposes, would be a trust fund in the hands of those state officials who are required to administer it. However, the State Assistance Fund could not be and was not intended to be a trust fund in the technical sense claimed by plaintiff.

Chapter 28, Laws 1935 (Special), section 8, page 171, now section 68-211, R. S. 1943, specifically provided that: "No person shall have any vested right to any claim against the state or county for assistance of any kind by virtue of being the recipient of old age assistance." Chapter 21, Laws 1935 (Special), section 8, page 144, now section 68-408, R. S. 1943, contained a like provision regarding recipients of "blind assistance." Such provisions are entirely inconsistent with plaintiff's contention.

Cases relied upon by plaintiff, except the opinions in State ex rel. Ridgell v. Hall, *supra,* heretofore overruled insofar as in conflict with this opinion, are clearly distinguishable from the case at bar both upon the law

and the facts. They involved special funds created by contributions from sources other than public revenue raised by taxation, over which our Legislature has plenary control except as limited by the Constitution. Fischer v. Marsh, *supra.*

As aptly stated in 59 C. J., States, § 382, p. 238: "The legislative power is supreme in matters relating to appropriations as to which no constitutional restrictions exist. Constitutional provisions requiring the existence of appropriations made by law secure to the legislature this exclusive power of deciding how, when, and for what purposes the public funds shall be applied in carrying on the government, and are conservative, not restrictive or prohibitory of the legislative power over the public revenue."

Plaintiff contended that chapter 242, Laws 1945, page 723, hereinafter called "the act" was unconstitutional as in violation of that part of section 14, article III, Constitution of Nebraska, which provides that: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title."

The title of the act read: "AN ACT making appropriations for the state government of the State of Nebraska for the biennium beginning July 1, 1945, and ending June 30, 1947; prescribing conditions for the determination of the levy of the state taxes for the state general fund; reciting limits and conditions on the expenditure of funds from the appropriations so made; and to declare an emergency."

Because of applicable rules well established in this jurisdiction, plaintiff's contention cannot be sustained.

This court has held that: "If an act has but one general object, no matter how broad that object may be, and contains no matter not germane thereto, and the title fairly expresses the subject of the bill, it does not violate section 14, art. III of the Constitution, providing that no bill shall contain more than one subject and

the same shall be clearly expressed in the title." Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289.

That provision does not require that the title to an act should be a synopsis of a law. Its purpose was to prevent surreptitious legislation by advising legislators of the nature of the measures they are called upon to support or oppose. If, by a fair and reasonable construction, the title calls their attention to the subject matter of the proposed act, it may be said that the object is clearly expressed in the title. Lennox v. Housing Authority of the City of Omaha, 137 Neb. 582, 290 N. W. 451.

The above rule was reaffirmed and applied in Maher v. State, 144 Neb. 463, 13 N. W. 2d 641. Therein, this court also reiterated an applicable rule stated in Pandolfo v. State, 120 Neb. 616, 234 N. W. 483, to the effect that: "The provisions of the Constitution relating to titles are to be 'liberally construed, and so construed as to admit of the insertion in a legislative act of all provisions which, though not specifically expressed in the titles, are comprehended within the objects and purposes of the act as expressed in its title; and to admit all provisions which are germane, and not foreign, to the provisions of the act as expressed in its title.' "

Plaintiff contended that the act was unconstitutional as in violation of section 14, article III, Constitution of Nebraska, which provides that: "* * * no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." The contention cannot be sustained because the act did not either amend or repeal section 68-301, R. S. 1943, as argued by plaintiff, but was simply in pari materia therewith. We so construe it.

Plaintiff also argued that the act was unconstitutional as in violation of that part of section 22, article III, Constitution of Nebraska, which requires that: "Bills making appropriations * * * for the salaries of the officers of the Government, shall contain no provision on any

other subject." The answer is obvious. The only subject of the act was appropriations for state government. It contained no other subjects or objects. The purpose of the constitutional provision above noted was to prevent designing legislators from including in bills appropriating money to carry on the government of the state, measures and objects foreign to that purpose, and thus, taking advantage of the necessities of the state, force the Legislature to adopt them, or defeat the appropriation and thereby stop the entire machinery of government for want of funds to carry it on. That purpose was not contravened by the act.

Finally, plaintiff argued that the act violated section 3, article I, Constitution of Nebraska, and section 1, article XIV, of the Amendments to the Constitution of the United States, which provide that: "No person shall be deprived of life, liberty, or property, without due process of law."

The primary purpose of that constitutional guaranty is security of the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private rights and distributive justice. 12 Am. Jur., Constitutional Law, § 575, p. 271.

As related to legislation, it is generally held that due process is satisfied if the Legislature had the power to act on the subject matter, if that power was not exercised in an arbitrary, capricious, or unreasonably discriminatory manner, and if the act, being definite, had a reasonable relationship to a proper legislative purpose. In other words, if an act of the Legislature is authorized and promulgated by the inherent and reserved constitutional powers of the state, and is enforced with due regard to and observance of the rules established by our system of jurisprudence for the security of life, liberty, and property, it is not in conflict with due process of law. 16 C. J. S., Constitutional Law, § 569, p. 1156.

Further, the general rule is that the power of the

state to control its own governmental agencies in their governmental capacities, is not ordinarily restrained by the requirement of due process. 16 C. J. S., Constitutional Law, § 570, p. 1158.

From previous discussion herein, it will be observed that the act involved meets every requirement of due process, and we conclude that plaintiff's contention has no merit.

For the reasons heretofore given, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.

MESSMORE, J., participating on briefs.