REQUESTED BY: Dear Senator DeCamp:
In your letter of March 13, 1980, you requested our opinion with respect to certain proposed amendments to LB 738, a bill before the current session. Specifically, you asked our opinion as to whether or not the proposed amendments created any constitutional problems.
LB 738 is similar in form and design to certain other commodity and check-off programs enacted into law by the Legislature (e.g., the Nebraska Corn Resources Act, Neb.Rev.Stat. §§ 2-3601, et seq. (Cum.Supp. 1978)). The proposed bill is also quite similar to one enacted by the Legislature last year, known as LB 14, which bill as you may know, was the subject of a declaratory judgment action before the District Court of Lancaster County, Nebraska. The controversial portion of LB 14, which ultimately resulted in a declaration of unconstitutionality, was section 34 of that bill which purported to authorize the Nebraska Department of Agriculture to conduct a special election to determine whether the other sections of the act should become operative. Because the district court's opinion in that litigation,State ex rel. Douglas v. Stewart (Docket 329, Page 22, November 7, 1979), is relevant, in our judgment, to the issues raised in your correspondence, we have enclosed a copy of the court's final decree and memorandum.
The amendments to LB 738, which you have asked us to address, do not affect the entire operation of the proposed act, which was the case in the litigation referenced above, but rather provide for a special election to determine the question of whether excise fees should be paid in accordance with section 22 of LB 738. The proposed amendments provide that, prior to December 31, 1980, the Nebraska Dry Bean Resources Commission `. . . shall conduct an election on the issue of implementing a fee pursuant to section 22 of this act.' In defining how this election shall be implemented, the proposed amendment provides, in part, as follows:
 "The commission shall mail a ballot to each person who would be personally liable for payment of fees pursuant to section 22 of this act if such fees are implemented for 1981. Persons receiving such ballots shall include, but not be limited to, growers, first purchasers, landlords receiving a share of a dry bean crop, tenants personally engaged in growing dry beans, and spouses and other family members personally engaged in growing dry beans if such persons would be personally liable for the payment of fees pursuant to section 22 of this act. Each person . . . shall be allowed one vote and no individual shall, as a result of membership in any association, interest in any business entity, or for other reason be permitted to cast more than one ballot. Such ballot shall be returned to the commission within 14 days after being mailed by the commission."
The commission is then instructed to publish the results of the election, and implement a fee pursuant to section 22 if a majority so approves, but is precluded from implementing a fee if a majority of those voting disapprove. The assistance of the Nebraska Department of Agriculture may be requested to conduct this special election.
For the reasons we shall discuss below, we believe that the proposed amendments to LB 738 would be very difficult to defend on a number of constitutional grounds.
A. Delegation of Legislative Power. At section 22 of LB 738, the proposed legislation delegates to the Nebraska Dry Bean Resources Commission the authority to determine the amount of an excise fee to be charged in commercial transactions involving dry beans. This authority has been limited in a range set by the Legislature, not to exceed ten cents per hundred weight. The proposed amendments, however, essentially delegate to the voters involved in a special election the power to determine whether any such fee will be charged at all. The question now becomes whether this is an appropriate delegation of a power normally reserved to the Legislature, that of establishing the amounts or limits of taxation or excise fees.
As the Nebraska Supreme Court noted in the case ofLennox v. Housing Authority of Omaha, 137 Neb. 582,290 N.W. 451 (1940):
 ". . . The legislature cannot delegate its powers to make a law, but it can make a law to become operative on the happening of a certain contingency or on an ascertainment of a fact upon which the law intends to make its own action depend. . . .' Id. at 590.
While the vote purportedly authorized by the amendments under consideration would not affect all operative provisions of LB 738, the vote would delegate to a select group of voters the authority to determine the question of whether any excise tax would be charged. Such a question is normally reserved to the judgment of the Legislature. Campbell v.Area Vocational Technical School No. 2, 183 Neb. 318,159 N.W.2d 817 (1968).
While our research has not disclosed any Nebraska Supreme Court decisions dealing with the type of special referendum involved here, we do note that Article VIII, section1 of the Nebraska Constitution confers the taxing power directly and exclusively on the Legislature. While the Constitution authorizes certain exceptions to the Legislature's exclusive authority in this area, such as assessments by school boards for education purposes, we have found no separate constitutional authority for the special election provisions of the proposed amendments to LB 738. Consequently, the amendments could be construed as an authorization to limited groups of voters to determine whether a tax can be imposed, which authorization could exceed these constitutional limitations.
B. Special Elections; Voting Limitations. It is clear that the proposed amendments envision a special election, as opposed to an election conducted under the general laws applicable thereto, such as set forth at Neb.Rev.Stat. §§32-101, et seq. (Reissue 1978). Consequently, such an election would not include the normal safeguards of notarized ballots when the vote is taken by mail, or other special safeguards to assure against fraud. Nonetheless, it may be arguable that the election falls within the definition of Neb.Rev.Stat. § 32-106 (Reissue 1978), as an election to `. . . decide any public question and proposition lawfully submitted.' As a result, the possibility exists of a challenge by any elector or excluded elector, such as that facing the court in the case of Arends v. Whitten, 172 Neb. 297,109 N.W.2d 363 (1961).
As noted on page 5 of the district court opinion enclosed herewith, the Nebraska Constitution, at Article III, section 18, provides, in part, as follows:
 "The Legislature shall not pass local or special laws in any of the following cases, . . .
 "The opening and conducting of any election, or designating the place of voting."
It would appear that the amendments at issue here could be found to constitute special legislation authorizing the Nebraska Dry Bean Resources Commission to conduct a special referendum or election, thereby violating the above referenced constitutional provision. Concerns over special interest elections have also been recognized by the United States Supreme Court in such cases as Kramer v. Union FreeSchool District No. 15, 395 U.S. 621, 23 L.Ed.2d 583,89 S.Ct. 1886 (1969). The Kramer decision struck down a New York law which limited eligibility to vote in school elections to property taxpayers or parents of children enrolled in the district's schools. In its opinion, the court denoted the standard by which courts are to review laws limiting the right to vote.
 ". . . Statutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives. Therefore, if a challenged statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest. . . ." 395 U.S. at 626-627, 23 L.Ed.2d at 589, 89 S.Ct. at 889-890.
In our judgment, it would be difficult to find a compelling state interest to limit the voting franchise involved here. While it is understandable that the parties liable to pay the excise fees involved may have a significant interest in the outcome of the envisioned special election, it could also be argued, under the Kramer rationale, that all Nebraska resident voters have an interest in a proposition affecting the cost of production of an agricultural commodity and the general economic welfare of the state.
C. Due Process; Vagueness of Terms. The final constitutional problem we have with the amendments under consideration is the difficulty in interpreting the legislative standards to be applied in conducting the special election. Again, as the district court noted in its review of LB 14, the legislative language defining such standards must be definite and certain. A vague or uncertain statute, where persons of common intelligence must necessarily guess at the meaning or application, denies due process of law. Rein v.Johnson, 149 Neb. 67, 30 N.W.2d 548 (1947), cert. denied,335 U.S. 814 (1947); Heywood v. Brainard, 181 Neb. 294,147 N.W.2d 772 (1967).
The amendment provides that persons eligible to vote `. . . shall include, but not be limited to, growers, first purchasers, landlords receiving a share of dry bean crop, . . .' and other persons generally having an interest in dry bean farming. The first question which arises is what interpretation should be given to the phrase `but not be limited to?' Does this mean that the commission is free to allow ballots to other persons who may have an interest in the growing of dry beans?
The legislation also leaves open the question of whether the franchise to vote should be allowed to individuals who may have been liable in the past for the payment of fees pursuant to section 22 of the act, but may not have any liability in the future. How is the commission to determine whether or not a person may become a `first purchaser' of dry beans in 1981?
While the amendment appears to answer the question raised by the district court in its opinion regarding LB 14, `who gets to vote?', it appears to us that a number of other questions remain unanswered. For example, if a dry bean farm was jointly operated by a corporation and an individual, and the excise fee liability was divided between these two parties, are both parties entitled to a ballot in the special election? It appears to us that both the lack of legislative guidelines, and the vagueness in the guidelines referenced above expose the proposed amendments to constitutional challenge on the grounds of due process and equal protection of the law. See e.g., Phoenix v. Kolodziejski, 399 U.S. 204,26 L.Ed.2d 523, 90 S.Ct. 1990 (1970).
For the foregoing reasons, we would advise you that the proposed amendments to LB 738 present serious constitutional problems and would probably not survive a judicial review on the constitutional grounds we have discussed.