ROBERT BARTELS AND SCHOOL DISTRICT NO. 17 OF DOUGLAS COUNTY, NEBRASKA, ALSO KNOWN AS MILLARD SCHOOL DISTRICT, APPELLANTS, V. JOE LUTJEHARMS, NEBRASKA COMMISSIONER OF EDUCATION, APPELLEE.

464 N.W.2d 321

Filed January 4, 1991.    No. 89-1493.

Malcolm D. Young and Jeff C. Miller, of Young & White, for appellants.

Robert M. Spire, Attorney General, and Harold I. Mosher for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiffs, Robert Bartels, a resident and taxpayer in School District No. 17 of Douglas County, Nebraska, also known as the Millard School District, and School District No. 17, brought this action to obtain a judgment declaring Neb. Rev. Stat. §§ 79-1302 and 79-1303 (Reissue 1987) unconstitutional and to enjoin the defendant, Joe Lutjeharms, as Commissioner of Education, from making in-lieu-of-tax distributions under §§ 79-1302 and 79-1303.

The trial court found that §§ 79-1302 and 79-1303 were not unconstitutional and dismissed the petition of the plaintiffs. The plaintiffs have appealed.

As a preliminary matter, the defendant contends that the action is in effect a suit against the State of Nebraska and that the state has not waived its sovereign immunity and consented to be sued.

An action against a state officer, attacking the constitutionality of a statute and seeking to enjoin its enforcement by such officer or to otherwise obtain relief from an alleged invalid act, ordinarily is not a suit against the state and is not prohibited under the general principles governing the

immunity of the state from suit. *Rein v. Johnson*, 149 Neb. 67, 30 N.W.2d 548 (1947). See, also, *Xerox Corp. v. Karnes*, 217 Neb. 728, 350 N.W.2d 566 (1984); Annot. 43 A.L.R. 408 (1926).

The controversy in this case involves the distribution of the income from the school lands granted to the state by the federal government. By § 7 of the Enabling Act of 1864, the federal government granted certain lands to the State of Nebraska for the support of the common schools of the state. Generally, these lands included Sections 16 and 36 of each township. See 13 Stat. 47, 49 (1866).

In some parts of the state, most of the school land has been sold. School districts in which the school land has been sold are able to receive tax revenue from the land which was formerly school land but is no longer exempt from taxation. School districts which contain school land which has not been sold are unable to levy taxes against such land. In order to equalize the distribution of income from the rental of school lands and income earned from the investment of the proceeds from school land which has been sold, the Legislature has provided that in-lieu-of-tax payments shall be made to districts which contain school land that has not been sold. See Education Committee Hearing, L.B. 572, 87th Leg., 2d Sess. 22A (Jan. 19, 1982). After the in-lieu-of-tax payments have been made, the balance of the income available for distribution is distributed to all school districts pro rata according to the enumeration of children between the ages of 5 and 18 years in each school district. School District No. 17 contains no unsold school lands and does not receive an in-lieu-of-tax distribution.

Pursuant to §§ 79-1302 and 79-1303, the defendant annually apportions and distributes the annual income from a school trust. The income consists of rents and profits from leased school lands and interest and income from school trust funds.

Section 79-1302(1) provides that the Commissioner of Education shall make the apportionment as follows:

> From the whole amount there shall be paid to those districts in which there are school or saline lands and to the nonresident high school fund of the county an amount in lieu of tax money that would be raised if such lands were

taxable, to be fixed in the manner prescribed in section 79-1303; the remainder shall be apportioned to the counties according to the pro rata enumeration of children between the ages of five and eighteen years in each county last returned from the county superintendent.

Section 79-1303 provides that the in-lieu-of-tax payments shall be ascertained as follows:

The county superintendents shall certify to the Commissioner of Education the tax levy for school purposes of each school district and the nonresident high school tuition levy of the county wherein such school land or saline land is located, and the last appraised value of such school land which value shall be one hundred forty-three per cent of the appraised value for the purpose of applying the applicable tax levy for each district in determining the distribution to the counties of such amounts.

In determining the in-lieu-of-tax distributions, § 79-1303 provides that the applicable school levy of each district shall be applied to 143 percent of the last appraised value of the school trust lands in the district. The last appraised value of the school trust lands which is used to calculate the in-lieu-of-tax distributions consists of each parcel's annual rental capitalized at the rate of 4 percent. Rentals are determined by surveying private-sector rental rates.

The in-lieu-of-tax payments made by the defendant in 1988 totaled $5,435,983.31. The 1988 pro rata distributions made by the defendant totaled $13,989,226.60. The total state 1989 school age census of 5- to 18-year-olds in eligible school districts was 339,215, resulting in a pro rata distribution, after the in-lieu-of-tax payments had been made, of $41.24 per student.

The total school age census of 5- to 18-year-old students in School District No. 17, as reported for the 1988 pro rata distribution, was 17,290. If the amounts distributed by the defendant as in-lieu-of-tax payments and pro rata distributions were distributed to the counties and school districts on a pro rata basis only, the per pupil distribution would have been $57.27 in 1988, and School District No. 17 would have received an additional allocation of $277,158.70.

The plaintiffs contend that the statutes providing for the in-lieu-of-tax payments are unconstitutional and in violation of the Enabling Act because the districts containing school lands receive a special benefit in the form of the in-lieu-of-tax payments to the detriment of the school districts which do not have school lands. This argument is based on the correct principle that the school lands are held in trust by the state for educational purposes, and as trustee of the lands and the income therefrom, the state is subject to the standards of law applicable to trustees acting in a fiduciary capacity. *State v. Jarchow*, 219 Neb. 88, 362 N.W.2d 19 (1985). Since the state's status as a trustee is established by the Constitution, a violation of its duty as trustee is a violation of the Constitution itself. *State ex rel. Ebke v. Board of Educational Lands and Funds*, 154 Neb. 244, 47 N.W.2d 520 (1951).

Fundamental trust law imposes on the state, as trustee, the duty to deal with all beneficiaries impartially. See, Restatement (Second) of Trusts § 183 (1959); 76 Am. Jur. 2d *Trusts* § 324 (1975).

However, those school districts which receive in-lieu-of-tax payments, if the payments are calculated correctly, do not receive a special benefit to the detriment of school districts which do not contain school lands. The purpose of the in-lieu-of-tax payments is to place all school districts on an equal basis by compensating for the fact that those school districts which contain tax-exempt school lands may not tax the school land. The other school districts, which do not contain school land, may tax all nonexempt lands in the district, including former school lands, to raise the revenue necessary to finance their schools. The in-lieu-of-tax payments are valid and lawful to eliminate the special detriment school districts containing tax-exempt school lands would otherwise suffer as compared to school districts which do not contain unsold school land.

The Constitution of 1875 provided in article VIII, § 7, that "[p]rovision shall be made by general law for an equitable distribution of the income of the fund set apart for the support of the common schools, among the several school districts of the state . . . ." The Constitution now provides that the funds

shall be exclusively used for the support and maintenance of the common schools in each school district "as the Legislature shall provide." Neb. Const. art. VII, § 9.

We believe it was within the power of the Legislature, pursuant to Neb. Const. art. VII, § 9, to establish in-lieu-of-tax payments to fulfill the state's duty as trustee to deal with the beneficiaries of the trust impartially so that school districts containing school lands are relieved of any detriment they would otherwise suffer by reason of the fact that such lands are not taxable while school districts containing no school lands are able to benefit from a greater tax base.

The plaintiffs further contend that even if some form of in-lieu-of-tax payments is constitutional, the method by which the school lands are valued is unconstitutional because private-sector land has been assessed for tax purposes below actual market value.

There is some evidence in the record that rural property in Nebraska has not been assessed for tax purposes at its market value. It has been assessed at 60 to 65 percent of actual value and sometimes at as much as 50 percent below market value.

The method used for valuing school lands for in-lieu-of-tax payments is capitalizing annual rentals at 4 percent. This does not necessarily result in the valuation of school lands at actual value or at values comparable to land in the district which is taxable. Properly applied, either the income approach or the market approach to appraising real estate should yield similar results as to actual value.

Lloyd Jay Gildersleeve, the deputy director of the Board of Educational Lands and Funds, testified that long-term capitalization rates for rural agricultural property are 4 to 5 percent. He also testified that for tax purposes a capitalization rate of 9.6 percent was used for valuing rural property.

The use of a lower rate of capitalization for valuing school lands results in higher in-lieu-of-tax payments than if school lands were valued on a comparable basis to land which is taxable.

The plaintiffs argue that the differences in valuation result in in-lieu-of-tax payments being 35 to 40 percent higher than the tax revenues which the school lands might generate if they were

on the tax rolls, thereby conferring a special benefit on the school districts which contain school lands.

However, none of this is of importance so far as this case is concerned. Neither § 79-1302 nor § 79-1303 provides the method of how school lands shall be valued for the purpose of in-lieu-of-tax payments. Consequently, the plaintiffs are not entitled to any relief on this basis.

The plaintiffs' final contention is that even if in-lieu-of-tax payments are otherwise valid, they cannot be based upon 143 percent of the last appraised value because this formula yields an amount equal to the *total* tax which would be imposed upon the school land if it were taxable, thus conferring a substantial benefit upon the school districts with school lands to the detriment of the school districts without trust lands, which receive only a percentage of the total tax imposed on taxable property.

The result of this provision in § 79-1303 is to give school districts with school lands an additional amount from the trust income equal to the amounts other political subdivisions would receive if school lands were taxable.

Because the use of 143 percent of the valuation yields an amount which is equal to the total tax which would be imposed on the school land if it were taxable, school districts with school lands receive more under the in-lieu-of-tax scheme than they would receive if the lands were taxable. The use of 143 percent of the valuation factor thus confers a benefit or bonus upon the school districts with school lands to the detriment of the school districts without trust lands.

The statutory provision requiring use of 143 percent of the valuation in calculating in-lieu-of-tax payments to school districts is a violation of the duty of the state as trustee to treat all beneficiaries of the trust fairly and impartially and is, therefore, invalid. This portion of the statute was added by amendments in 1982 and 1983 and is severable. See, 1982 Neb. Laws, L.B. 572; 1983 Neb. Laws, L.B. 39.

That part of the judgment of the district court is, therefore, reversed and the cause remanded with directions to enter a judgment declaring that the statutory provision requiring the use of 143 percent of the valuation of school lands in

determining in-lieu-of-tax payments is unconstitutional and enjoining the defendant, Lutjeharms, as Commissioner of Education, from distributing in-lieu-of-tax payments upon the basis of 143 percent of the last appraised value of the school lands. The judgment in all other respects is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.