## OPINION OF THE JUDGES.

1. The term "fiscal quarter," as used in section 19, article III of the constitution, means one quarter of a calendar year, for which the legislature is required to make appropriations for the expenses of the government. The above section of the constitution has no reference to legislative appropriations for 1875 and 1876, made prior to the adoption of the constitution: it was intended solely for the guidance of future legislatures.

2. A requisition for the salary of an officer should show on its face for what month or quarter and year the same was earned.

3. All necessary expenses of the government for the years 1875–1876, should be paid out of the appropriations for such years. Unexpended balances thereof lapse into the treasury, and cannot be drawn out for expenses incurred during the years 1877–1878; nor can the appropriations for 1877–1878 be resorted to for the purpose of supplying deficiencies of 1875–1876.

4. Proceeds of "convict labor" uncollected for the year 1876 may properly be applied in payment of outstanding indebtedness for support of convicts incurred during that year.

5. In the absence of a repealing act, or an act of limitation, it does not matter how long after the money provided for in an appropriation act is earned that it is applied for. As to *it* the act will continue in force and operation until the money is drawn from the treasury.

6. By section 30 of the constitution of 1867, provision for the support of the government by the legislature was limited to two years. The money might not have been actually drawn during that time, but the expense must have been incurred or the salary earned, during the two years for which the appropriation was made.

AT the adjourned January Term of court held on the 13th of March, 1877, the following communication was received from the officers of the Executive Department, which with the reply thereto is, at their request, published for the benefit of all concerned:

LINCOLN, NEBRASKA, MARCH 13, 1877.

*To the Supreme Court of Nebraska:*

WE, the undersigned, would respectfully represent that much doubt and uncertainty exists in regard to the correct construction of the provisions of appropriation laws, passed by the eleventh session under the old constitution, in connection with the acts making appropriations under the new constitution, and if not inconsistent with the duties of your Honorable Court, and in order to further a proper execution of the laws, we would respectfully solicit an opinion upon the following questions:

1. What calendar date is understood in the term "fiscal quarter," as found in section 19, article III of the new constitution? Does the language "and all appropriations shall end with such fiscal quarter," contained in said section, apply to appropriations made by the eleventh session? Are the appropriations of the eleventh session continued in force until the expiration of said fiscal quarter?

2. Reference being had to appropriation bill, approved February 23, 1875, Session Laws, page 219, and a copy of an act hereto attached, approved February 15, 1877, marked Exhibit "A," and requisition for a warrant for the "Normal School," marked Exhibit "B," it will be observed that the act of February 15, 1877, makes appropriations for normal school expenses, and this requisition is made February 20, 1877. Is this requisition subject to warrant out of unexpended balance of appropriation of 1875?

3. Are unexpended balances of appropriations made for incidental expenses to the executive state officers by act of February 23, 1875, subject to a warrant upon an application made February 23, 1877, for the outstanding balance in gross, to be accounted for to the finance committee of the legislature under provisions of said acts, February 23, 1875, and February 15, 1877?

4. Referring to page 225, Session Laws of 1875, appropriation act, approved February 23, 1875, the proceeds of convict labor were appropriated for the "care and support of state prisoners." During the year 1876, there remains uncollected, on account of convict labor, the sum of $2,515.70. There are also outstanding debts accruing in 1876 for maintenance of state prisoners. Under existing laws can said proceeds for convict labor, after payment thereof shall have been made into the state treasury, be disbursed on Auditor's warrants in payment of such outstanding indebtedness?

5. Are applications for warrants on outstanding balances for appropriations of 1875, accompanied by requisite voucher, subject to warrant, if such applications are made within two years of date of such appropriation? Are such applications subject to warrant if made before expiration of "first fiscal quarter?"

6. What is the construction of section 30, article II of the old constitution, in case the appropriation has been earned during the two years, but not drawn—can it be drawn after expiration of two years from date of appropriation?

Respectfully submitted.

SILAS GARBER, *Governor.*

BRUNO TZSCHUOK, *Secretary of State.*

J. B. WESTON, *Auditor of Public Accounts.*

To a further understanding of the questions above propounded and the reply thereto, it may be stated that the eleventh session of the legislature was held under the constitution then in force, in January and February, 1875. Section 30, article II of that constitution, provides: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law; and no appropriations shall be made for a longer period than two years."

Appropriations were made at that session for the "cur-

rent expenses of the years 1875 and 1876." It included appropriations for "normal school," referred to in question two, and also provided that each state officer should "keep an itemized account of the incidental expenses pertaining to his office, and report the same with proper vouchers to the finance committee of the next general session of the legislature."

On the first day of November, 1875, the present constitution went into operation. Section 19, article III, provides: "Each legislature shall make appropriations for the expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter. And whenever it is deemed necessary to make further appropriations for deficiencies, the same shall require a two-thirds vote of all the members elected to each house, and shall not exceed the amount of revenue authorized by law to be raised in such time. Bills making appropriations for the pay of members and officers of the legislature, and for the salaries of the officers of the government, shall contain no provision on any other subject."

The first *regular* session of the legislature under this constitution, and the next in order of time to the eleventh session of 1875, was held in January and February, 1877. On the 15th of the latter month it passed an act referred to in question two as exhibit "A," " making appropriations for the current expenses of the government for the years 1877 and 1878, and first fiscal quarter of the year 1879."

It is upon a construction of these constitutional and statutory provisions that these questions were asked, and the following reply given thereto:

To His Excellency, Silas Garber, Governor, Bruno Tzschuck, Secretary of State, and J. B. Weston, Auditor of Public Accounts.

*Gentlemen:*—Your communication addressed to the

supreme court came duly to hand, but the questions propounded are not presented in such manner that, as a court, we could answer them. But, in view of the great importance of the main question involved in your inquiries, not so much by reason of the amount involved at this time, which we understand is not considerable, as in the establishment of a practice which shall be in harmony with the constitution, and the laws passed in pursuance thereof, we have thought it best to give you very briefly, our individual views. We do this the more readily for the reason that we do not see how there can be a difference of opinion among men accustomed to the construction of statutes. We shall not take the time to enter upon any extended argument of the matter, but briefly answer the questions in the order you have presented them.

I. By "fiscal quarter," as used in section 19, Article III, of the new constitution, was evidently meant one quarter of a calendar year for which the legislature is required to make provision for the expenses of the several departments of the state government. The first clause of this section is directory merely, and it was evidently intended thereby that there should be no period of time when the different departments are not provided for in advance of their financial wants. The language employed, if strictly construed, would seem to indicate an intention to designate the second quarter of the third year as the one to which the appropriation should extend —that is, the full quarter next after the one in which the regular session of the legislature is held. The language is, "*until the expiration of the first fiscal quarter after the adjournment of the next regular session.*" But the legislature recently in session having construed these words to mean the quarter in which the session is to be held, and as this construction accomplishes, to all intents and purposes, all that was expected of the pro-

vision, it should perhaps be accepted as the correct construction of the language employed. At all events, it is a construction which must stand, and which no one can question, so far, at least, as the last act of appropriation is concerned. This section has no reference whatever to the act of the eleventh session of the legislature, making appropriations for the current expenses of the years 1875 and 1876, but was intended solely for the guidance of future legislatures. It confers no authority whatever to use any portion of the appropriations for 1875–6 to defray the expenses of any other year, or portion of a year.

II.  The requisition for a warrant for the salary of a teacher in the "Normal School," marked "Exhibit B," is defective in not showing when the salary was earned. If it were earned in 1876, then of course it is chargeable to the appropriation of the eleventh session; but if earned during the present year, then it is provided for in, and can legally be paid only out of, the appropriation of 1877; but it is impossible for the auditor to know from "Exhibit B" out of what appropriation it is payable. The requisition should show upon its face in what month and year the services were performed, for the guidance of this officer.

III.  To your third interrogatory, we answer — No! When it so happens that there are unexpended balances remaining after all the expenses for the time named in the act of appropriation have been paid, these balances are no longer subject to order, but may, perhaps, properly be said to *lapse*, or fall back again to the particular fund from which it was, at most, only nominally separated by the act of appropriation. In reality, it can hardly be said to have been separated at all; for by the very terms of the act, *only so much as is necessary* for a particular period of time is appropriated. If the legislature had intended those balances should have been used for the years 1877 and 1878, they would have said so in

unmistakable language.   This, however, they did not do; but, on the contrary, definite sums are named, limiting the amount that may be drawn for the use of the different departments of the public service, and for a definite time.  The appropriations for 1877–78 cannot be resorted to for the purpose of supplying any deficiency in that for 1875–76, nor can they be increased by the addition of the unexpended balance of former years.   When all of the expenses legitimately incurred in the years 1875–76 are paid, the whole object of the act of appropriation of 1875 is accomplished, and nothing more can be legally done under it.   That this was the intention of the legislature in passing the act, there can be no doubt whatever.   The language used is, "That the following sums of money, or *so much thereof as may be necessary*, be and the same hereby is appropriated," etc.   Under this authority when all the money *necessary* for the expenses of *these years* has been drawn from the treasury, not another farthing can be lawfully taken.

IV.   As to the expenses referred to in this question, we think they may be properly paid out of the moneys uncollected, and due for convict labor, when collected, unless the legislature has otherwise provided.   If, however, provision for payment has been made out of any other fund, or if this money has been diverted to some other object by the legislature, then of course they cannot.

V.   In the absence of a repealing act, or of an act of limitation, it does not matter how long after the money provided for in an appropriation act is earned, that it is applied for.   As to *it*, the act will continue in force and operation until the money is drawn from the treasury.

VI.   This section means simply this: that provision for the support of the government by any one legislature must be limited to two years.   It does not require the money appropriated to be actually drawn from the treas-

ury during that time, but the expense must be incurred or the salary earned, during the two years for which the appropriation was made.

Yours respectfully,

GEORGE B. LAKE.

I concur in the above answers to the questions propounded.

D. GANTT.

I fully concur in the several answers of Judge LAKE to the questions propounded.