(No. 25482.—

THE PEOPLE *ex rel.* The City of Chicago, Petitioner, *vs.* EDWARD J. BARRETT, Auditor of Public Accounts, Respondent.

*Opinion filed February 21, 1940—Rehearing denied April 10, 1940.*

394

BARNET HODES, Corporation Counsel, (JOSEPH F. GROSS-MAN, and J. HERZL SEGAL, of counsel,) for petitioner.

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, of counsel,) for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original petition for *mandamus* to require respondent, the Auditor of Public Accounts, to register certain notes issued by the Governor, the State Treasurer and the Auditor, in conformity with a certain act of the

legislature known herein as Senate Bill No. 184, enacted by the Sixty-first General Assembly, directing that those public officials issue and sell from time to time, notes payable from a county's or municipality's share of the motor fuel tax fund, authorized to be collected by the State during the years subsequent to the enactment of Senate Bill No. 184 and prior to July 1, 1959. (Ill. Rev. Stat. 1939, chap. 146½, par. 28, *et seq.*) Material portions of that act will be hereinafter referred to.

Under section 1, such notes may be issued against the anticipated share of the county or municipality, within the act, in such future motor fuel tax fund and are to be paid solely out of such fund when collected. The notes may be issued only after the passage of a resolution by the governing body of the municipality or county requesting same and providing, with the approval of the Department of Public Works and Buildings, for opening, extending, improving, etc., streets and thoroughfares, and engineering costs in connection therewith. Such improvements are to be constructed from the proceeds of the notes. By section 2 it is provided that the proceeds of the sale of the notes issued by the Governor, State Treasurer and Auditor, shall be paid to the municipality from whose share of the motor fuel tax fund the notes are to be made payable. Section 2 also provides: "The corporate authorities of such county or municipality shall have power to expend the proceeds so received for the purposes for which such notes were issued without an appropriation therefor; provided, no such proceeds shall be expended unless the specific locations of the roads, streets or thoroughfares, including rights-of-way, to be opened, widened, extended, improved, constructed or reconstructed are filed with the Department of Public Works and Buildings, by such corporate authorities, on or before March 1, 1940."

The petition in this case alleges that a request had been made by the city of Chicago for the issuance of $100,000 of

such notes by the Governor, State Treasurer and Auditor, for the purpose of defraying engineering costs necessary to prepare a comprehensive plan for superhighways, to be obtained immediately, in order that such plan may be filed with the Department of Public Works and Buildings within the time required by the act.

It is apparent from the petition that no such description of the proposed improvements has been filed with the Department of Public Works and Buildings. It does not appear that specific locations of such improvements can be filed on or before March 1, 1940. The purpose of this petition is evidently to secure funds to make a survey for what is characterized in this proceeding as superhighways. The resolution of the city, passed on August 30, 1939, states that it was determined that various roads, streets and thoroughfares in the city of Chicago shall be opened, widened, extended, improved and constructed, and the necessary rights-of-way acquired therefor, to provide a system of superhighways in the city of Chicago. All of such roads, streets or thoroughfares "to be hereafter definitely located and described subject to the approval of the Department of Public Works and Buildings of the State of Illinois." This, of course, does not comply with the requirements of section 2 above quoted—that such specific description be filed with the department by March 1, 1940.

The petition alleges that although a note in the sum of $10,000 was signed by the Governer, State Treasurer and Auditor, under this act, the Auditor has refused to register the same, as provided by the act, and such note is therefore unsalable, and the petition seeks an order of this court requiring that he register the note in a book kept for that purpose.

This act provides that the notes shall recite that they are payable from the county's or municipality's share of the motor fuel tax fund, as the case may be, and solely out of

that fund, when collected, and not otherwise. The act states: "Said notes are issued under the provisions of this act and do not constitute an indebtedness of the State or of the county or municipality within any constitutional limitation." It is sufficient to say that such a provision of the act is without effect, as the question whether they do constitute an indebtedness contrary to constitutional limitation, is a judicial and not a legislative matter.

Section 5 also provides: "Until all of said notes shall have been paid the tax authorized by the Motor Fuel Tax law and the county's or municipality's share of said tax shall not be reduced below a rate which will produce less than one and one-half times the amount required each year to pay the interest on said notes as it matures and the amount required to be set aside as a sinking fund after payment of principal and interest on relief bonds as hereinbefore provided." This provision, as it stands, is unintelligible and meaningless, and unless certain words in it can be disregarded, the limitation as to rate of such tax is not intelligibly stated.

Respondent, the Auditor of Public Accounts, filed an answer making the following legal contentions: (1) Senate Bill No. 184 is invalid in that it attempts to authorize the State to contract debts in violation of the limitations contained in section 18 of article 4 of the constitution; (2) it attempts to vest the Governor, State Treasurer and Auditor of Public Accounts with power, by issuing motor fuel tax notes, to prevent succeeding General Assemblies, until July 1, 1959, from reducing the tax authorized by the Motor Fuel Tax law to counties and municipalities having a population of 500,000 or more, to which the act is limited, and that such provision violates article 3, and section 1 of article 4 of the constitution, and (3) the act is, by its terms, made applicable only to counties or municipalities having a population of 500,000 or more, with the result that it is

applicable only to Chicago and Cook county, and constitutes local and special legislation in violation of section 22 of article 4 and section 2 of article 2 of the constitution.

In answer to the first objection, the petitioner contends that the notes, payable solely from the city's share of the motor fuel tax fund, are not debts of the State; that they possess none of the essential elements of tax anticipation warrants or notes, and are not to be confused with them. It says, also, that the so-called motor fuel tax is not, after all, a tax; that to so designate it is a misconception, and that it is a service charge or toll for the use of the highways, measured by the amount of gasoline consumed, and, as such, the funds so derived are subject to pledge as are road tolls and receipts from water plants, light plants, and like utilities, the pledging of which is held not to be a debt.

Petitioner cites *People* v. *Deep Rock Oil Corp.* 343 Ill. 388, and *Winter* v. *Barrett,* 352 Ill. 441, as supporting its contention that it is a misnomer to call the receipts of the gasoline tax a motor fuel tax fund, and that it is an excise or privilege tax and not a property tax. Petitioner argues that the court should consider the word "tax" not as a tax but as a charge or toll for the use of the highway, as in the case of toll roads and toll bridges, which may be pledged for repayment of money borrowed for their construction, and as water rentals or charges for electricity by municipal plants, whose revenues may be pledged as security for the repayment of money borrowed to pay for the construction or purchase of the plants, as was held in *Hairgrove* v. *City of Jacksonville,* 366 Ill. 163, *Rockford Loan Ass'n* v. *City of Rockford,* 352 id. 348, and *Ward* v. *City of Chicago,* 342 id. 167. Those cases hold that a pledge of receipts from a toll bridge, waterworks or electric light plant, is not the creation of a debt of the municipality. Those cases, however, are based on the fact that no tax is levied for the payment of a debt and the public is in no way obligated to pay the same, for the reason that the projects are self-

liquidating. The pledges of such funds are held not to incur indebtedness but to partake of the nature of purchase-money mortgages. This is the rule generally adopted. *California Toll Bridge Authority* v. *Wentworth,* 212 Cal. 298, 298 Pac. 485; *Bates* v. *State Bridge Com.* (*State Bridge Com.* v. *Nease,*) 109 W. Va. 186, 153 S. E. 305; *Alabama Bridge Corp.* v. *Smith,* 217 Ala. 311, 116 So. 695; *Estes* v. *State Highway Com.* 235 Ky. 86, 29 S. W. (2) 583; *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9; *Connor* v. *Blackwood State Highway Comr.* 176 Ark. 139, 2 S. W. (2) 44.

In *State* v. *Kansas State Highway Com.* 138 Kans. 913, 28 Pac. (2) 770, it was held that warrants issued to finance State highways and bridges payable only out of motor vehicle and motor fuel taxes were not debts, for the reason that the sections of the State's constitution prohibiting the creation of debts by the State, applied only to debts to be paid by a general property tax, and as no property tax can ever be levied to pay such warrants, they did not constitute a debt of the State. To the same effect are *Briggs* v. *Greenville County,* 137 S. C. 288, 135 S. E. 153, *State* v. *Moorer,* 152 id. 455, 150 S. E. 269, and *State* v. *Connelley,* 39 N. M. 312, 46 Pac. (2) 1097. Section 18 of article 4 of the constitution of this State provides that debts up to $250,000 may be contracted; that "no other debt, except for the purpose of repelling invasion, suppressing insurrection, or defending the State in war, (for payment of which the faith of the State shall be pledged,) shall be contracted," unless approved by a vote of the people. It is also there provided: "Provision shall be made at the time, for the payment of the interest annually, as it shall accrue, by a tax levied for the purpose or from other sources of revenue." Thus, under our constitution, debts created by the State may be paid not only by a property tax for that purpose, but "from other sources of revenue," and so the reason or basis for the decisions cited does not obtain in this State.

The prohibition of section 18 of article 4 of our constitution applies not only to debts to be paid by taxation, but likewise to debts paid from other sources of revenue. If they are to be paid from State revenues they are State debts.

Under our constitution the State is not limited to levying a property tax to raise necessary revenue for operation of the State government, but may levy property taxes on valuation basis, occupation taxes, or franchise or privilege taxes. (*Reif* v. *Barrett,* 355 Ill. 104; *Bachrach* v. *Nelson,* 349 id. 579.) All State taxes and all revenues derived through any or all of those three methods are State revenues.

It was held in *People* v. *Deep Rock Oil Corp. supra,* that the motor fuel tax imposed by the Motor Fuel Tax act constituted a proper selection of a subject of taxation for the purpose of raising public revenues under the constitution. It will be readily seen that bonds or notes secured by, and to be paid solely out of, tolls, income from waterworks or electric light plants, are on an entirely different basis from notes secured by and to be paid from State revenue to be collected in the future, under an act, which, as now in force, provides for an allocation of a fixed proportion thereof to a political subdivision or municipality of the State.

Counsel for petitioner point out that the portion of the motor fuel tax fund out of which these notes are to be paid has been designated and allotted by the General Assembly as a fund belonging to the city of Chicago as a road fund. The fact, however, that the General Assembly has provided that this tax, or any tax, when collected, shall be paid into a certain fund or allotted to municipalities or subdivisions of the State, does not preclude a later General Assembly from ordering it paid into another fund or abolishing such fund altogether. (*Werner* v. *Martin,* 359 Ill. 213.) Bonds and notes secured by and to be paid from revenues derived from the specific income-bearing property, for which the bonds are issued, differ very materially from notes issued in anticipation of the collection of the public revenue for

the construction of highways which return no revenue but are a constant liability for maintenance and repair. In the latter case the State is pledging its faith that revenues paid to it, which may be used for general governmental purposes (*Werner* v. *Martin, supra; Michaels* v. *Barrett,* 355 Ill. 175;) if the General Assembly should so direct, shall, however, be used to pay such notes. An essential element of a debt is the obligation to pay. This obligation the State, by guaranteeing that the source or allocation of State revenues to such purpose shall not be altered or reduced, assumes under this act. An instrument that is to be paid through a tax levied by the State, is a State debt. *Lobdell* v. *City of Chicago,* 227 Ill. 218; *Village of East Moline* v. *Pope,* 224 id. 386; *City of Joliet* v. *Alexander,* 194 id. 457.

The special fund doctrine, which, in cases of water and electric light utilities and bridge tolls, constitutes an exception to the debt-limitation provision, is based on the theory that an obligation incurred in the acquisition, construction or extension of income-bearing property and payable solely from the income of that property, is not a debt of the State or municipality. Such doctrine does not, in our opinion, extend to obligations payable from taxes, which, in whatever form the legislature may collect them, are State revenues. As we have seen, the limitation by the constitution of this State upon the creation of debts by the State, includes not only debts payable from a tax on property but also debts payable "from other sources of revenue." Const. art. 4, sec. 18.

It was held in *Werner* v. *Martin, supra,* that the General Assembly may transfer motor fuel tax funds from one use to another, where that fund has not already been pledged to the payment of bonds theretofore issued in accordance with the provisions of the constitution. Such funds are revenues of the State, and the General Assembly, subject to that limitation, is empowered to subdivide them into any funds it sees fit, or remove them from one fund to another.

It follows that the provisions of the Motor Fuel Tax Note act, under consideration herein, limiting the use of motor fuel tax funds to the particular purpose set out in that act until July 1, 1959, must, to be valid, be based upon the pledge of a valid State debt created by a vote of the people.

The motor fuel tax fund, once it is paid into the State treasury, may not be paid out without an appropriation, (Const. art. 4, secs. 17, 18,) unless it be a fund derived from a source provided by law and a vote of the people authorizing the debt which it is to pay.

That the notes issued under this act constitute a debt can scarcely be gainsaid. A debt is that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit; a thing owed. Giving that word the plain ordinary meaning, whose debt is it? Certainly not the petitioner's. As a municipality it is not a party to the obligation. It cannot be said to be the personal debt of the Governor, State Treasurer or Auditor, collectively or individually. The act provides for certain promissory notes. Notes are evidence of a debt; they bear interest and have to be paid. By attempting to control the maintenance of the tax rate on gasoline, and, by its obligation under the act, to attempt to maintain the amount and proportion of the tax raised which shall be paid to the city for whose benefit the notes are issued, the legislature has thus attempted to make the State responsible for the payment of those notes and they become, therefore, the debts of the State. We are of the opinion that Senate Bill No. 184 creates a debt against the State contrary to constitutional limitations.

Senate Bill No. 184 is also open to the objection that it would vest in the Governor, State Treasurer and Auditor of Public Accounts the power to prevent, by the issuance of motor fuel tax notes, succeeding General Assemblies from reducing the tax authorized by the Motor Fuel Tax law, or the share thereof allotted to counties or cities having

a population of 500,000 or more, below a certain rate, and would prevent future General Assemblies from reapportioning that part of the State's revenue to other purposes. It is fundamental, under our constitution, that "the legislature possesses every power not delegated to some other department or to the Federal government, or not denied to it by the constitution of this State or of the United States." (*Gillespie* v. *Barrett*, 368 Ill. 612.) In the recent case of *People* v. *Lindheimer*, 371 Ill. 367, this court held that the General Assembly has the undoubted right to repeal all legislative acts which are not in the nature of a private grant. In *Fergus* v. *Russel*, 277 Ill. 20, and *Mix* v. *Illinois Central Railroad Co.* 116 id. 502, it was held that it is not competent for the legislature to attempt to limit its own legislative powers. Under section 18 of article 4 of the constitution the pledging of funds for the payment of bonds and interest is permitted when it is done in the manner set forth, that is, by the approval of the vote of the people at a general election. Wanting such vote in this case, the General Assembly is without power to delegate to the executive department the power, by the issuance of notes, to pledge the motor fuel tax fund for the retirement of those notes over a period of years, so as to prevent succeeding General Assemblies from repealing the Motor Fuel Tax law entirely, reducing the rate, or changing the purposes or fund into which it is to be paid. (*Werner* v. *Martin, supra; Reif* v. *Barrett, supra.*) This question has also arisen in some of our sister States. In *Boswell* v. *State*, 75 Pac. (2d) 940, the Oklahoma Supreme Court, and in *State* v. *Griffith*, 22 N. E. (2d) 200, the Supreme Court of Ohio, held it to be beyond the power of a General Assembly to guarantee the continuity of its legislation or tie the hands of its successors.

The argument of counsel for the petitioner, that the tax collected from the sale of gasoline is not to be treated as a tax or revenue but a toll charge, and is, therefore, subject

to being pledged as bridge tolls and as income from water-works and electric light plants, is to argue for a strained construction. While it is true, the gasoline tax is not paid for the use of motor vehicles, when that use is confined to agriculture and thus not for using the highway, it is like-wise true, however, that this fund constitutes public revenue from one of the three types of taxes that may be imposed, and it is not to be confused with funds arising from income-bearing utilities and the like, which pay for themselves. The roads proposed to be built will not be toll roads nor will they, of themselves, produce any revenue, but as we have indicated, constitute an expense from the time they are made. And when the legislature attempts to pledge the rev-enue of the State to the payment of an obligation, such, by usual and ordinary meaning of the language, constitutes a pledge to pay, and therefore a debt. We are of the opinion that the contention of the respondent in this regard must be sustained. Other objections are raised which it becomes unnecessary to consider.

The writ of *mandamus* is denied.

*Writ denied.*