State of Nebraska ex rel. Clarence A. H. Meyer, Attorney General, plaintiff, v. M. O. Steen, Secretary of the Game and Parks Commission of the State of Nebraska, et al., defendants.

160 N. W. 2d 164

Filed June 21, 1968.   No. 36872.

Clarence A. H. Meyer, Attorney General, and Gerald S. Vitamvas, for plaintiff.

Kutak, Rock & Campbell and Nixon, Mudge, Rose, Guthrie, Alexander & Mitchell, for defendants.

Heard before White, C. J., Carter, Spencer, Boslaugh, Smith, McCown, and Newton, JJ.

Boslaugh, J.

This is an original action brought by the Attorney General at the request of the Governor to determine the

validity of the 1967 Game and Parks Commission State Headquarters Construction Act. §§ 81-805.04 to 81-805.30, R. S. Supp., 1967. The defendants are the members and secretary of the Game and Parks Commission.

The act in question provides that the Game and Parks Commission may undertake a state headquarters construction program to be financed by bonds or notes issued by the commission and payable from the State Game Fund. The act further provides that the commission may pledge the fund for the payment of the bonds and notes and that the Legislature "pledges and agrees" with the holders that "it shall not repeal, diminish or apply to any other purpose the amount of fees imposed pursuant to sections 37-201 to 37-228, and allocated to the fund" so long as any bonds or notes remain outstanding and unpaid unless other provision for payment has been made.

The petition alleges that the act violates the constitutional limitation upon state indebtedness, Article XIII, section 1, and authorizes a continuing appropriation in violation of Article III, section 22, of the Constitution of Nebraska. The answer admits the facts alleged in the petition and prays that the act be declared valid. The case has been submitted upon the motion of the plaintiff for judgment on the pleadings.

The limitation upon state indebtedness which is contained in Article XIII, section 1, of the Constitution of Nebraska, is as follows: "The state may, to meet casual deficits, or failures in the revenues, contract debts never to exceed in the aggregate one hundred thousand dollars, and no greater indebtedness shall be incurred except for the purpose of repelling invasion, suppressing insurrection, or defending the state in war, and provision shall be made for the payment of the interest annually, as it shall accrue, by a tax levied for the purpose, or from other sources of revenue, which law providing for the payment of such interest by such tax shall be irrepealable until such debt be paid."

The present limitation came into our Constitution in 1875. Prior to that time, an indebtedness in excess of $50,000 could be authorized by a vote of the people. Art. II, § 32, Constitution of Nebraska, 1866. Proposals to liberalize the present constitutional limitation were considered by the Constitutional Convention of 1919-1920 and rejected.

The defendants rely upon the "Special Fund Doctrine" and contend that the debt limitation provision of the Constitution is not applicable because the bonds and notes authorized by the act are payable only from the State Game Fund and not from revenue derived from general taxation.

The State Game Fund is derived from the sale of permits and licenses to hunt, trap, and fish. Under present legislation the game fund is devoted to the development and protection of wildlife in the state. But the revenue received from the sale of such permits and licenses is subject to the control of the Legislature and may be used for support of the schools or some other legal use. Wilcox v. Havekost, 144 Neb. 562, 13 N. W. 2d 889. In this respect, the revenue which constitutes the State Game Fund is similar to other revenue collected and received by the state.

The special fund doctrine appears to have had its origin in a case where the construction of a waterworks system by a municipality was financed by obligations payable only from revenue derived from the operation of the system. Winston v. City of Spokane, 12 Wash. 524, 41 P. 888. The court in that case held that such a plan was not subject to a constitutional limitation upon indebtedness because there was no liability upon the city to pay the debt out of its general funds. This court has held the special fund doctrine applicable to the improvement of a light plant, Carr v. Fenstermacher, 119 Neb. 172, 228 N. W. 114; and to the construction of a toll bridge, Kirby v. Omaha Bridge Comm., 127 Neb. 382, 255 N. W. 776.

In some states, the special fund doctrine has been extended to obligations payable exclusively from a special fund created by the imposition of fees, penalties, or excise taxes if the general credit of the state is not pledged and resort may not be had to property taxation. See Annotation, 100 A. L. R. 900. The defendants urge a similar result in this case.

Other courts have held that the debt limitation is applicable to obligations to be paid from sources of revenue other than the property tax. State ex rel. Washington State Finance Committee v. Martin, 62 Wash. 2d 645, 384 P. 2d 833; Boe v. Foss, 76 S. D. 295, 77 N. W. 2d 1; People ex rel. City of Chicago v. Barrett, 373 Ill. 393, 26 N. W. 2d 478.

The ultimate incidence of any debt which consumes an existing public income or resource is on the taxpayer. He cannot be insulated from that impact by the device By a constitutional amendment, adopted in 1966, the By a constitutional amendment, adopted in 1966, the Legislature in this state is prohibited from levying a property tax for state purposes. Art VIII, § 1A, Constitution of Nebraska. The principal sources of state revenue are now the income tax and the sales tax. If the Legislature is free to authorize unlimited indebtedness payable from special funds derived from excise taxes, it is apparent that the constitutional limitation upon indebtedness is ineffective.

One purpose of the constitutional limitation upon state indebtedness is to prevent the anticipation of revenue by the creation of obligations to be paid from revenue to be received in future fiscal periods. Obligations which are to be paid from revenue subject to appropriation by future Legislatures are subject to the state debt limitation provision.

We think the act in question is a clear violation of Article XIII, section 1, of the Nebraska Constitution. It is an attempt to authorize the spending of the revenue to be received from the sale of permits and licenses to

hunt, trap, and fish far in advance of the receipt of the revenue. It is a form of financing which the constitutional provision was intended to prevent.

The act in question also conflicts with the Constitution in that it attempts to make a continuing appropriation of the revenue from the sale of permits and licenses to hunt, trap, and fish. The act contemplates that the appropriation will continue until all the bonds or notes have been paid.

It has long been the law in this state that continuing appropriations of "public revenue" are prohibited by Article III, section 22, Constitution of Nebraska, which provides in part: "Each Legislature shall make appropriations for the expenses of the Government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter." See, Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548; Power Oil Co. v. Cochran, 138 Neb. 827, 295 N. W. 805; State ex rel. Norfolk Beet-Sugar Co. v. Moore, 50 Neb. 88, 69 N. W. 373, 61 Am. S. R. 538; State ex rel. M. C. Bullock Mfg. Co. v. Babcock, 22 Neb. 33, 33 N. W. 709; Opinion of the Judges, 5 Neb. 566.

The defendants cite numerous cases from other jurisdictions where different rules prevail. Such cases are not applicable in view of our particular constitutional provision and the interpretation which has been made of it since 1875.

It is the duty of this court to apply and enforce the Constitution as it is written. If the limitation upon state indebtedness is no longer necessary or desirable, the Constitution may be amended to express the present will of the people. But if the Constitution is to be amended, that is the privilege of the electorate and not of this court.

The plaintiff's motion for judgment on the pleadings is sustained.

JUDGMENT FOR THE PLAINTIFF.