GEORGIA M. RUGE, APPELLANT, v. STATE OF NEBRASKA
ET AL., APPELLEES, OMAHA WORLD HERALD COMPANY
ET AL., INTERVENERS-APPELLEES.

267 N. W. 2d 748

Filed July 12, 1978. No. 41842.

Russell S. Daub, Wallace M. Rudolph, H. Daniel Smith, and Renne Edmunds, for appellant.

Paul L. Douglas, Attorney General, Terry R. Schaaf, Herbert M. Fitle, Omaha City Attorney, and Patrick W. Kennison, for appellees.

Kutak, Rock & Huie, for interveners-appellees.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and HASTINGS, District Judge.

BOSLAUGH, J.

This is an action for a declaratory judgment brought by a resident taxpayer of the City of Omaha, Nebraska, to determine the validity of a lease agree-

ment between the City of Omaha and the State of Nebraska and certain statutes relating to the lease.

The defendants are the Governor; the Director of the Department of Administrative Services; the State Building Administrator; the mayor and the members of the city council of the City of Omaha; and Downtown Omaha, Inc. The Omaha World-Herald Company; Peter Kiewit; The Kiewit Foundation; The Omaha National Bank; Northern Natural Gas Company; and Northwestern Bell Telephone Company are interveners.

The matter was heard upon motions for summary judgment filed by the plaintiff, the defendants, and the interveners. The trial court found generally for the defendants and interveners on all issues, over-ruled the plaintiff's motion for a partial summary judgment, and sustained the motions of the defendants and interveners. The plaintiff has appealed.

The evidence is documentary in nature and the case presents primarily questions of law. Although the plaintiff contends there are genuine issues of fact to be resolved, there are no material facts in controversy which would require a remand for trial. The case may be disposed of on the questions of law which the parties have raised.

The controversy arises out of a plan for the financing of the construction of a State Downtown Education Center and Office Building to be located in the downtown area of Omaha, Nebraska. The plan was developed by the State of Nebraska, the City of Omaha, and various other parties. Reduced to its essentials, the plan contemplates the construction of the facility by the city using funds derived from donations and revenue bonds. The state is to lease the property with an option to purchase or renew the lease. The state is to finance its requirements under the plan from the cigarette tax.

In 1976 the Legislature enacted L. B. 1006 which authorized the state to prepare plans and specifica-

tions for the facility and to enter into an agreement with the city concerning the facility. The act also created the Downtown Education Center and Office Rental Fund which is one of the matters in controversy in this case.

A lease agreement dated April 1, 1977, between the state and city has been executed. It is a lengthy document which provides generally that the City of Omaha will build the facility and lease it to the state at no greater cost to the state than the cost thereof to the city. The term of the lease is to commence on November 1, 1979, and end on June 30, 1986. The rental payment is $1,300,000 per year subject to adjustment as otherwise provided in the agreement. The agreement grants the state an option to purchase at any time during the lease at an amount to be determined so that no gain or loss will result to the city. The lease contains an option for the state to renew the lease for successive renewal rental periods until March 31, 2027.

The city has acquired the necessary real estate and has authorized the issuance of the revenue bonds. The revenue bonds have not been sold because of this litigation.

The plaintiff's principal contentions are: (1) The lease between the state and the city is actually a long-term purchase obligation by the state in violation of the constitutional provision limiting indebtedness; (2) the statutes enacted as L. B. 1006 anticipate future legislative funding in violation of the indebtedness limitation; and (3) the statutes violate the constitutional provision against continuing appropriations.

The constitutional provision limiting indebtedness of the state is contained in Article XIII, section 1, Constitution of Nebraska, and provides as follows: "The state may, to meet casual deficits, or failures in the revenue, contract debts never to exceed in the aggregate one hundred thousand dollars, and

no greater indebtedness shall be incurred except for the purpose of repelling invasion, suppressing insurrection, or defending the state in war, and provision shall be made for the payment of the interest annually, as it shall accrue, by a tax levied for the purpose, or from other sources of revenue, which law providing for the payment of such interest by such tax shall be irrepealable until such debt is paid; * * *."

Much of the plaintiff's argument is directed to the fact that the lease agreement between the city and state does not resemble an ordinary commercial lease. Without question the agreement is a device to permit the state to obtain the use of the facility through a system of annual payments. This by itself does not invalidate the agreement. The question is whether the state has assumed a binding obligation which violates the constitutional provision against indebtedness.

The plaintiff's contention that the lease is really a long-term purchase obligation depends entirely upon whether the state is bound to make the required payments over the term of the lease. The fact is that the obligation of the state is conditioned upon an appropriation having been made before each rental period commences. The rental periods are 12 months each, except the first which is 8 months, and commence on July 1st after the first year.

The lease specifically provides that: "It is a condition precedent to the commencement of the term of this Lease Agreement and the incurring of any liability of the Lessee hereunder, that there shall be in effect an Appropriation for the payment of the rentals and other sums to become due and payable hereunder by the Lessee during the Rental Period * * *." The lease further provides: "The continued effectiveness of this Lease Agreement for subsequent Rental Periods is subject to the condition that on the first day of such subsequent Rental Period

there is in effect an Appropriation for the payment of the rentals and other sums to become due and payable hereunder by the Lessee during such subsequent Rental Period, or there are on such first day Other Available Moneys for the payment of such rentals and sums, in which event the Lessee shall be liable hereunder only for the respective Rental Period or Periods for which an Appropriation or Appropriations have been lawfully made, or for which there are such Other Available Moneys." Other available moneys are defined as " * * * any other moneys, alternate to an Appropriation, which may at the time be lawfully applied by the Lessee to the payments of rentals or other sums becoming due and payable by the Lessee under this Lease Agreement, and which are sufficient, and have theretofore been, or are then, lawfully set aside or allocated, for such payment."

The liability of the state is limited to rental periods of 12 months or less, for which there has been an appropriation or other available money. In the event there is none, the lease terminates. Since the liability of the state extends for only 1 year at a time there is no binding obligation beyond the rental period for which an appropriation has been made. The plaintiff's first contention is without merit.

The plaintiff's second contention is directed at section 77-2602, R. R. S. 1943, as amended by L. B. 1006, which provides in part as follows: "Every person, engaged in distributing or selling cigarettes at wholesale in this state, shall pay to the Tax Commissioner of this state a special privilege tax. * * * The proceeds of eight cents of such tax shall be placed in the General Fund and the proceeds of the remaining five cents of such tax shall be distributed in the following order: * * *

"Fourth, there shall be placed in the Downtown Education Center and Office Rental Fund the sum of nine hundred sixty thousand dollars each year for

fiscal years 1976-77 through 1983-84 and two million two hundred eighty thousand dollars each year for fiscal years 1984-85 and 1985-86. Such amounts are hereby appropriated and the unexpended balances existing in such fund at the end of each fiscal year through June 30, 1986, are hereby reappropriated; * * *."

The plaintiff relies upon State ex rel. Meyer v. Steen, 183 Neb. 297, 160 N. W. 2d 164, in which a statute authorizing the pledging of fees to be collected from the sale of permits and licenses in the future was held invalid. We held that statute violated both the debt provision and the provision against continuing appropriations.

The distinction in this case is that section 77-2602, R. R. S. 1943, merely establishes a fund within the treasury which may not be expended without a further appropriation. This distinction was recognized in Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548, which involved an appropriation of certain revenue to the State Assistance Fund. In that case we said: "* * * the Legislature never intended that it should operate as an appropriation in the constitutionally prescribed sense. Rather, the word 'appropriated' as used therein was of constitutional necessity as well as legislative intent, used only to indicate that certain public revenue derived or to be derived from certain described tax revenue sources should be paid into the state treasury, there to be administratively credited, assigned, or allocated to the State Assistance Fund for assistance purposes as distinguished from other public funds of a different nomenclature." See, also, Stahmer v. State, 192 Neb. 63, 218 N. W. 2d 893; Lawrence v. Beermann, 192 Neb. 507, 222 N. W. 2d 809.

That this was the legislative intent is further made clear by sections 81-1108.44 and 81-1108.47, R. R. S. 1943, which provide in part:

"The Department of Administrative Services, with the advice of the State Building Advisory Commis-

sion, shall cause plans, working drawings, and specifications to be prepared for building a downtown education center and office building in Omaha * * *. The department * * * may expend for such purpose any funds appropriated by the Legislature for the project. * * * Payments due from the state for any space which it might lease in such building and facilities shall be made from the Downtown Education Center and Office Rental Fund which is hereby created, into which fund shall be deposited such amounts as the Legislature shall provide." § 81-1108.44, R. R. S. 1943.

"The proceeds of the fund created by section 81-1108.44 shall be expended by the Department of Administrative Services, as and when appropriated by the Legislature, for any rental payments to be made by the State of Nebraska to the city of Omaha under the agreement made pursuant to section 81-1108.45 for the use by the state of the building and facilities described in section 81-1108.44." § 81-1108.47, R. R. S. 1943.

The plaintiff's third contention is similar to the one just discussed but is directed at the constitutional provision against continuing appropriations contained in Article III, section 22, which now provides in part: "Each Legislature shall make appropriations for the expenses of the Government."

Prior to the 1972 amendment to Article III, section 22, Constitution, appropriations were expressly limited to the end of the next fiscal quarter succeeding the adjournment of the next regular session of the Legislature. The interveners argue that the elimination of this language from the Constitution now permits the Legislature to exercise its own discretion as to the length of time over which an appropriation may extend.

It is unnecessary in this case to determine the exact meaning of Article III, section 22, Constitution, as amended, because the plaintiff's contentions relate to

the appropriation of future revenue. Both contentions are without merit because, as previously stated, section 77-2602, R. R. S. 1943, does not make an appropriation except in an administrative sense, and funds placed in the Downtown Education Center and Office Rental Fund in the state treasury cannot be expended until there has been a specific legislative appropriation, all as provided by section 81-1108.47, R. R. S. 1943.

In Section 28 of the lease the lessee agrees to pay to the lessor, upon termination of the lease, as liquidated damages for the default by the lessee: "* * * the reasonable costs incurred by Lessor in reletting the Land and the Public Facility and the reasonable costs of alterations incurred by Lessor in reletting the same, or the reasonable costs to Lessor necessary to place the Land and the Public Facility, or either of them, in condition for reletting, which costs shall be paid by Lessee to Lessor upon notice to Lessee that such reletting has been accomplished or such alterations have been completed, as the case may be, and of the amount of the costs thereof." Under this provision the state assumes a liability of an undetermined amount, for which no appropriation has been made, and which will be payable, if at all, at some undetermined time in the future.

One purpose of the constitutional limitation upon state indebtedness is to prevent the anticipation of revenue by the creation of obligations to be paid from revenue received in future fiscal periods. State ex rel. Meyer v. Steen, *supra*. The provision in Section 28 of the lease is a promise to pay which becomes effective upon a termination of the lease and qualifies the earlier provisions which conditioned the liability of the state upon a legislative appropriation having been made at the commencement of each rental period. The amount due the lessee under this provision might well exceed the constitutional limitation upon indebtedness. This kind of an open-

ended promise violates the spirit and purpose of the constitutional limitation against indebtedness, is beyond the power of the state to assume, and is invalid and unenforceable.

We have examined and considered the other contentions of the plaintiff and find them to be without merit.

The judgment of the District Court is modified as to the provision in Section 28 of the lease which requires the state to pay liquidated damages upon termination of the lease. As modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.