REQUESTED BY: Mr. William R. Giovanni, Director Department of Administrative Services State Capitol Lincoln, Nebraska 68509
Dear Mr. Giovanni:
You have requested the advice of the Attorney General on how to distribute the 8.5 million dollars which the 1985 Legislature approved for payment of the claim against the State of Nebraska on behalf of the Commonwealth depositors in LB 713.
Further legislative action is required to complete the process for payment of the Commonwealth 8.5 million dollar tort claim to the trustee for the depositors. We regret that this is necessary because legislative intent to pay the 8.5 million dollars is perfectly clear. However, under Nebraska law intent alone is not sufficient to authorize the payment. There must also be specific legislative authority stating that the funds to pay the 8.5 million dollar tort claim are appropriated.
This specific and essential appropriation authority language was omitted from the legislative bill approving the payment. Nebraska law does not allow this specific appropriation language to be inferred or implied, no matter how clear the underlying legislative intent may be. And so we have concluded that this 8.5 million dollars has not been appropriated.
Our hearts are heavy as we reach this legal conclusion. We have profound concern for the welfare of the depositors and full awareness of the clear legislative intent for the depositors' trustee to receive these funds. Thus, we have great personal discomfort in reaching this legal conclusion. However, to be true to our constitutional, professional and ethical obligations we must interpret the law as it is, not as we wish it might be.
We cannot bend the law to meet a particular result, no matter how just or desirable that result may be. The Legislature makes our Nebraska laws, not the Attorney General or anyone else. Therefore, further direction must be forthcoming from the 89th Legislature. The Attorney General cannot and will not ignore or try to change through invalid legal interpretation actual Nebraska laws. Our respect for our governmental system based on the sanctity of law requires this approach by us.
Why have we reached this conclusion? The court order which approved this claim was the basis for the legislative action authorizing payment of it. This court order provides that settlement of the claim is conditional upon the Legislature making a 1985 appropriation for the claim. LB 713 (which authorized payment of this claim) states that the 8.5 million dollars should be transferred from the Cash Reserve Fund to the State General Fund "to pay" the tort claim. It does not contain the requisite appropriation language. Neb.Rev.Stat. § 49-804
provides that actual appropriations of funds leaving the state treasury can only be made if the Legislature actually appropriates the funds through language specifically referring to the appropriation. Our laws here are perfectly clear. They are designed to provide for a rigid and definite procedure whenever any public funds are actually to be paid out. The goal here is to account for and protect with the greatest care the funds which, as taxpayers, all of us have paid to the state.
What can be done to correct this payment problem as quickly and easily as possible? Should it choose to do so, the Legislature in a brief special session limited solely to appropriating 8.5 million dollars from the State Treasurer's Suspense Fund Number 7999, in order to pay Tort Claim Number 4-302, could correct this obvious problem in the appropriation process. This is all that is necessary. There are expenses and inconvenience involved in holding such a special session. However, these expenses and this inconvenience are the price we pay for our strict adherence to the concept of following our laws exactly as they are enacted by the Legislature, not as we might wish they had been enacted. This concept is basic to the fundamental principle of government by rule of law, not by whim.
The Treasurer has been asked to isolate and segregate the 8.5 million from the General Fund so that any interest that would have gone to Commonwealth depositors effective September 16, 1985, will not be commingled with State General Funds pending a resolution of this dilemma.
Here is the detailed legal basis for the analysis summarized above:
LB 713 provides simply that:
 The Legislature determines that the settlement of Tort Claim Number 4-302, as asserted against the State of Nebraska by the Receiver for Commonwealth Savings Company, insolvent, and as approved by the district court for Lancaster County, should be allowed and paid in the amount of eight million five hundred thousand dollars as authorized by the State Tort Claims Act.
LB 713 further provides that:
 On September 15, 1985, the State Treasurer shall transfer eight million five hundred thousand dollars from the Cash Reserve Fund to the General Fund to pay Tort Claim Number 4-302. Such transfer shall be reversed after July 1, 1986, but before July 15, 1986.
The question was then raised as to whether or not LB 713 constitutes a valid appropriation under state law. Article III, Section 22, of the Nebraska Constitution states that, "Each Legislature shall make appropriations for the expenses of the Government." Article III, Section 25, of the Nebraska Constitution further provides in part that:
 No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued as the Legislature may direct, and no money shall be diverted from any appropriation made for any purpose or taken from any fund whatever by resolution.
In this regard the Nebraska Supreme Court has said as follows:
 The latter section makes necessary a specific appropriation for a particular purpose, and forbids the drawing of a single dollar from the state treasury unless authorized by an appropriation.
Under the Constitution it is not within the province of executive or administrative officers to determine the purpose for which the state's funds may be expended. Only the legislative branch of the government may declare for what purpose and within what amounts state funds may be expended. Any other expenditure than that authorized by the Constitution and valid enactments thereunder is unlawful. Fischer v. Marsh, 113 Neb. 153 at 156, 202 N.W. 422 (1925). See, also, Rein v. Johnson, 149 Neb. 67 at 78, 30 N.W.2d 548
(1947); and Ruge v. State, 201 Neb. 391 at 396, 267 N.W.2d 748
(1978).
In order to avoid further disputes as to what constitutes a specific appropriation as had arisen in the past, the Legislature in 1979 enacted a law spelling out the necessary requirements for a valid appropriation under the state Constitution. Neb.Rev.Stat. § 49-804 (Reissue 1984) provides follows:
An appropriation shall only exist when the following criteria have been met:
(1) There shall be included the phrase there is hereby appropriated;
(2) A specific fund type shall be identified and the fund shall be appropriated;
(3) The amount to be appropriated from such fund shall be identified;
(4) A specific budget program or a specific statement reflecting the purpose for expending such funds shall be identified; and
(5) The time period during which such funds shall be expended shall be identified. Neb.Rev.Stat. § 49-805 (Reissue 1984) further provides that "A legislation not meeting the criteria established in section49-804 shall not be considered a valid appropriation as defined in Article 3, section 22 of the Nebraska Constitution."
It is apparent that LB 713 does not contain the necessary phrase required by paragraph 1 of Neb.Rev.Stat. § 49-804 "there is hereby appropriated." In addition, it is questionable whether the requirements of paragraph 2 of that statute are met in that a specific fund type shall be identified and the fund shall be appropriated. On the other hand, the other three requirements of Neb.Rev.Stat. § 49-804 have been met by LB 713.
It is clear from LB 713 that the intent of the Legislature was to pay this claim. This expression of intention, however, no matter how sincere on the part of the Legislature, is not enough to constitute a specific appropriation. This is best illustrated in the case of State v. Moore, 50 Neb. 88,69 N.W. 373 (1896). In that case the Legislature had previously enacted a law providing for the payment of a bounty for the manufacture of sugar from sugar beets in Nebraska. The Legislature did not appropriate any specific funds for this purpose for the year in question. Nevertheless, a manufacturer filed a writ of mandamus compelling the Auditor of Public Accounts to draw a warrant on his behalf. The argument of the claimant was that "having accepted the provisions of the act by manufacturing the sugar for which it claims the bounty, its relations with the state are contractual, and that the state cannot refuse payment, because to do so would be to impair the obligations of its own contract." Id. at 92.
The Court stated as follows:
 There is, however, a broad distinction between the moral, and even in one sense the legal, obligation of a state to make a payment, and the duty or the power of its officers to fulfill that obligation. Under constitutions such as ours an appropriation for the purpose is indispensable to authorize the state's executive officers to make a payment, no matter how great the moral or the legal obligation may be on the part of the state to make such payment. The state being sovereign, while it may incur obligations, there is no method except those by itself established whereby such obligations may be enforced, and it is in general for the legislature by means of an appropriation to recognize an obligation of the state and permit its enforcement. As said in Ristine v. State, 20 Ind., 328: "A promise by the government to pay money is not an appropriation. A duty on the part of the legislature to make an appropriation is not such. A promise to make an appropriation is not an appropriation. The pledge of the faith of the state is not an appropriation of money with which to redeem the pledge. . . ."
Id. at 92-93.
The claimant nevertheless contended that the language of the act itself created an appropriation and cited authorities "for the purpose of establishing that to constitute an appropriation the word `appropriation' or `appropriate' is not essential; that it is sufficient that an intention to make an appropriation is disclosed by the act." Id. at 94. The Court, however, stated that:
 This also may be conceded with the qualification that it is the settled law of this state that there can be no implied appropriation. [Citation omitted.] By that we understand that an appropriation cannot be implied from the fact that the legislature has by law created an obligation to make a payment. In addition to this it must appear that it has provided for the payment by a constitutional appropriation; in other words, the appropriation must be express, although the expression may be in any language evidencing the intent and need not be in any set form of words.
Id. at 94. See, also, State v. Wallichs, 15 Neb. 609 at 610,19 N.W. 641 (1884).
This case was obviously decided prior to the enactment of Neb.Rev.Stat. § 49-804, and absent that statute it could be argued that LB 713 does constitute a valid appropriation. The Legislature, however, has seen fit to enact a statute to establish specific requirements for valid appropriations. And in view of the caselaw indicating the necessity for specific appropriations and prohibiting implied appropriations regardless of the moral or legal obligations of the state, we must conclude that the Legislature, while approving the payment of the claim, has failed to make a specific appropriation to implement that payment in this case. Consequently, the money designated in LB 713 cannot at this time be paid out of the state treasury until the Legislature has provided a specific appropriation.
In this regard we would note that the Tort Claims Act, Neb.Rev.Stat. § 81-8,224 (Supp. 1984), also provides that "no portion in excess of fifty thousand dollars of any award or judgment shall be paid until such award or judgment has been reviewed by the Legislature and specific appropriation made therefor." This necessity for a specific appropriation was recognized by the parties in the Application for Approval of Settlement filed in Case No. 391-280 in the District Court of Lancaster County, Nebraska, from which this particular claim arises. In that case the court in its order of April 26, 1985, approved the language of the application requiring a "specific appropriation of the funds for this settlement by the Legislature of the State of Nebraska in the 1985 Legislative Session, in accordance with § 81-8,224, R.R.S. Neb.; . . ." order to facilitate this particular settlement agreement, it is thus necessary that a specific appropriation be made by the 1985 Legislature. If the Legislature were not to make the necessary appropriation until the 1986 legislative session, the settlement agreement reached by the parties and approved by the court to date will be in question.
In summation, then, there is no specific appropriation pursuant to the Nebraska Constitution and state law, specifically Neb.Rev.Stat. § 49-804 (Reissue 1984), for the claim approved by LB 713. It is therefore incumbent upon the Legislature to make the necessary appropriation before the State Treasurer and the Director of Administrative Services can make any payment of money from the state treasury. At the present time LB 713 only authorizes the transfer of the 8.5 million dollars from the Cash Reserve Fund to the General Fund.
We assure you that our conclusions here are not the result of lawyer nitpicking. The legal issues we have addressed are not mere "technicalities." These issues are fundamental to the Nebraska constitutional and statutory requirements which control the appropriation of public funds. As a personal matter we so wish we could reach a different conclusion. However, the law must dictate our legal judgments, not our personal feelings.
SINCERELY,
ROBERT M. SPIRE ATTORNEY GENERAL