REQUESTED BY: Fernando Lecuona, III, Commissioner Department of Labor
You have requested the opinion of the Attorney General concerning the constitutionality of a financing arrangement under federal law that authorizes the State to borrow funds from the federal government to fund payment of benefits provided in the Employment Security Law, Neb. Rev. Stat. §§ 48-601 to 48-671
(1993 and Cum. Supp. 1996). Among other things, the Employment Security Law establishes various funds for payment of unemployment compensation benefits to eligible individuals and provides for determining the contribution rate applicable to each employer for each calendar year.
State unemployment agencies may receive "advances" from the federal government for payment of benefits upon application of the Governor of the State under the provisions of42 U.S.C.A. §§ 1321 and 1322. The specific question you ask is whether borrowing by the State of Nebraska from the federal government is subject to the restrictions set forth in Article XIII, sec. 1 or any other section of the Nebraska Constitution. It is our opinion that borrowing funds from the federal government for payment of unemployment benefits would fall within the constitutional prohibition against contracting debts set forth in Article XIII, sec. 1 of the Nebraska Constitution. It is unnecessary to address other constitutional issues since we have concluded that the constitutional debt limitation is applicable to the borrowing arrangement you have inquired about.
STATUTORY BACKGROUND
You indicate the constitutional question arises because the Commissioner of Labor is charged with the duty of determining the rate of combined tax applicable to each employer under the provisions of Neb. Rev. Stat. §§ 48-649 and 48-650 (Cum. Supp. 1996). As part of the rate determination procedure, the Commissioner considers anticipated benefit payments, anticipated combined receipts, and fund balances available for payment of benefits. The Department of Labor is interested in knowing whether borrowing funds from the federal government may be considered as a funding source for payment of unemployment benefits.
Federal statutes authorize the states to receive "advances" from the federal government for payment of unemployment compensation benefits. 42 U.S.C.A. § 1321 in material part states:
 (a)(1) Advances shall be made to the States from the Federal unemployment account in the Unemployment Trust Fund as provided in this section, and shall be repayable, with interest to the extent provided in section 1322(b) of this title, in the manner provided in sections 1101(d)(1), 1103(b)(2), and 1322 of this title. An advance to a State for the payment of compensation in any 3-month period may be made if —
 (A) the Governor of the State applies therefor no earlier than the first day of the month preceding the first month of such 3-month period, and
 (B) he furnishes to the Secretary of Labor his estimate of the amount of an advance which will be required by the State for the payment of compensation in each month of such 3-month period. . . .
Federal statutes further provide for the method of repayment of the loans and for loan interest amounts.42 U.S.C.A. § 1322 in part states:
 (a) Repayment by State; certification; transfer
 The Governor of any State may at any time request that funds be transferred from the account of such State to the Federal unemployment account in repayment of part or all of that balance of advances, made to such State under section 1321 of this title, specified in the request. The Secretary of Labor shall certify to the Secretary of the Treasury the amount and balance specified in the request; and the Secretary of the Treasury shall promptly transfer such amount in reduction of such balance.
(b) Interest on loan
 (1) Except as otherwise provided in this subsection, each State shall pay interest on any advance made to such State under section 1321 of this title. Interest so payable with respect to periods during any calendar year shall be at the rate determined under paragraph (4) for such calendar year. . . .
The Federal unemployment account in the Unemployment Trust Fund is the funding source for "advances" to states. The account is established under the provisions of 42 U.S.C.A. § 1104 and Federal Unemployment Tax amounts determined by the Secretary of the Treasury are transferred to the account pursuant to42 U.S.C.A. §§ 1101 and 1102.
CONSTITUTIONAL DEBT LIMITATIONS
The Nebraska Constitution limits the amount of state indebtedness and prohibits continuing legislative appropriations. Article XIII, sec. 1 in pertinent part states:
 The state may, to meet casual deficits, or failures in the revenue, contract debts never to exceed in the aggregate one hundred thousand dollars, and no greater indebtedness shall be incurred except for the purpose of repelling invasion, suppressing insurrection, or defending the state in war, and provision shall be made for the payment of the interest annually, as it shall accrue, by a tax levied for that purpose, or from other sources of revenue, which law providing for the payment of interest by such tax shall be irrepealable until such debt is paid. . . .
(Emphasis added).
Various legislative enactments and financing plans authorized by those acts have been determined to be violative of Article XIII, sec. 1 by the Nebraska Supreme Court. The issue is whether the act and the financing arrangements authorized result or may result in the contraction of debt or the incurrence of an indebtedness within the meaning of the constitutional prohibition. A purpose of the constitutional limitation upon state indebtedness is to prevent the anticipation of revenue by the creation of an obligation to be paid from revenue in future fiscal periods. Obligations which are to be paid from revenue subject to appropriation by future legislatures are subject to the state debt limitation provisions.
In State ex rel. Douglas v. Thone, 204 Neb. 836,286 N.W.2d 249 (1979), a legislative act which provided for the construction of plants and facilities for the manufacture of agricultural ethyl alcohol (gasohol) was found to be violative of the debt limitation. The Nebraska Supreme Court concluded that the constitutional limitation of state indebtedness was violated because the financial arrangements which guaranteed the payment of bond indebtedness was guaranteed through pledging of state funds. Similarly, a legislative act to assist in the financing of waste water treatment works was determined to be unconstitutional since fees and charges to be received would be pledged as security for repayment of bond indebtedness. State ex rel.Meyer v. Duxbury, 183 Neb. 302, 160 N.W.2d 88 (1968). Also seeRuge v. State, 201 Neb. 391, 267 N.W.2d 748 (1978) (finding that lease provisions that obligated the state to certain open-ended costs were violative of the constitutional debt limitation).
We believe the question, whether borrowing funds from the federal government is constitutionally offensive, is for the most part addressed by State ex rel. Meyer v. Steen, 183 Neb. 297,160 N.W.2d 164 (1968). In this case, the state would incur indebtedness through issuance of bonds or notes to be repaid from fee revenue from the sale of permits and licenses to hunt, trap, and fish. It was argued that the constitutional debt limitation did not apply because the indebtedness was to be repaid only from permit and license fees and not from revenue derived from general taxation ("Special Fund Doctrine"). The Nebraska Supreme Court observed that revenue derived from sale of permits and licenses is subject to control of the Legislature and, in this respect, is similar to other revenue collected and received by the State.
In finding the financing arrangement unconstitutional, the Court stated:
 If the Legislature is free to authorize unlimited indebtedness payable from special funds derived from excise taxes, it is apparent that the constitutional limitation upon indebtedness is ineffective.
Id. at 300, 160 N.W.2d at 167.
Similarly, we believe the borrowing mechanism authorized by the federal statutes would constitute indebtedness of the state payable from special fund taxes that is offensive to ArticleXIII, sec. 1 of the Nebraska Constitution.
We further do not think that the fact that the state would be borrowing funds from the federal government would serve to vitiate in some fashion the constitutional prohibition against indebtedness of the state. It has generally been held that a state cannot avail itself of loans available under federal statutes, the National Industrial Recovery Act of 1933, because of state constitutional provisions limiting state indebtedness.See, Re Opinion to Governor, 54 R.I. 45, 169 A. 748 (1934). We have found no case authority that negates state constitutional debt limits if the federal government is the provider of funds to a state in a financing arrangement.
In summary, we conclude that borrowing funds from the federal government by the state under the facts you present would likely offend the constitutional limitations regarding indebtedness of the state.
Sincerely yours,
 DON STENBERG Attorney General
 Fredrick F. Neid Assistant Attorney General
Approved By:
Don Stenberg
Attorney General